STATE OF MINNESOTA *vs.* OLE SORENSON..

May 31, 1884.

**Homicide—Self-Defence—Attack on Third Person.**—Upon the trial of
   an indictment for homicide, the defence being that the killing was in self-
   defence, while deceased was committing a dangerous assault on defend-
   ant, the defendant proved the character and circumstances of an aggra-
   vated assault committed by deceased on another person immediately before
   the assault on defendant.    *Held,* that proof of the permanent conse-
   quences upon the health, nervous system, and mental faculties of such
   other person, of the assault on him, was not admissible.

**Same — Evidence — Expert — Physical Disability inducing Nervous
   Sensibility.**—The defendant, at the time of the assault on him, was lia-
   ble to a physical disability, which was fully proved.    The defendant then
   offered to prove by physicians that this had a tendency to produce a state
   of nervous sensibility and mental cowardice, and hasty apprehension of
   danger, which would not exist in a person not having such disability.
   *Held,* inadmissible.

**Same—Necessity or Apparent Necessity of the Killing.**—An instruc-
   tion that, in specified circumstances, the defendant had a right to kill in
   self-defence is erroneous, if it leaves out of account the necessity, or (to
   the defendant) the apparent necessity, of the killing, to prevent a felony
   upon him, or great bodily harm to him.

**Trial on Legal Holiday.**—The trial was commenced before, and proceeded
   with and closed on, Washington's birthday, the 22nd of February.    *Held,*
   that it was for the trial court to determine at the time upon the necessity
   of continuing the trial on that day, and its action in that behalf is final.

The defendant was tried in the district court for Ramsey county,
before *Wilkin,* J., upon an indictment for the murder of one William

Johnson. The principal defence was that the killing was in self-defence. The trial began on February 19, 1883, and was continued from day to day, the case being submitted to the jury on the 22nd, and a verdict of guilty of manslaughter in the second degree returned on the 23rd. A motion in arrest of judgment and a motion for a new trial were made and denied, and the defendant sentenced to five years' imprisonment in the state .prison. The case comes to this court upon writ of error.

*John W. Willis,* for plaintiff in error.

*William J. Hahn,* Attorney General, for the State.

GILFILLAN, C. J.[1] The request made at the close of the evidence on the part of the state, for an instruction to the jury to return a verdict of not guilty, was properly refused. The evidence then in did not make it appear that the killing was justifiable so clearly that the court could do otherwise than submit it to the jury.

It appeared that, immediately prior to the killing, the deceased, who was to some extent intoxicated, had committed an aggravated assault upon one Benson, inflicting a severe wound on him, which was known to defendant at the time of the killing. The circumstances of this assault, the acts and conduct of deceased in making it, were proved. The defendant then offered to prove the ultimate effects of that assault upon Benson; that it caused a serious and permanent injury to his nervous system and mental faculties; that his health was seriously impaired; that he was disabled in a large degree from performing his usual avocations; and that it would probably shorten his life. This was excluded. The theory of the defence being that the killing was in self-defence, while deceased was committing a dangerous assault on defendant, and that assault following closely upon the one committed on Benson, it was proper to show the circumstances and character of the latter assault, known to defendant, in order to show what he had reasonable ground to apprehend in the assault on him, the violent character of deceased, and his frame of mind at the time, as manifested by his assault on Benson. But the subsequent consequences to Benson, which could not be known to defendant, and which could not show the condition of mind of deceased,

[1] Dickinson, J., because of illness, took no part in this decision.

were immaterial, and the evidence was properly excluded, as it could only tend to confuse the issues on trial.

The defendant was allowed to prove fully and without objection that, prior to the killing, his right shoulder was subject to become frequently dislocated whenever he exerted that arm. He then offered to prove by physicians that this had a tendency to produce a state of nervous sensibility and mental cowardice, and a hasty apprehension of danger, which would not exist in a person not having such disability, so that he would not meet an attack with the same firmness and nerve that one not disabled would. The character of the disability was such that its probable natural effect on one's firmness and courage was not a matter for testimony. The jury could judge of it, if it was entitled to be considered at all, as reliably as the most skilful physician.

The defendant requested the court to instruct the jury: "*Third.* If the jury believe that the deceased, at the time of the homicide, was rushing at the defendant, having in his hand a club capable, when wielded by a man of ordinary strength, of inflicting great bodily harm, with intent then and there to strike defendant with such club, and to inflict great personal injury, the deceased was then engaged in an attempt to commit a felony upon the defendant, and the defendant was justified in killing him, and must be acquitted." "*Fifth.* If the deceased, at the time of the homicide, was attempting to commit a felony upon the defendant, and defendant committed the homicide in resisting such attempt, the homicide is justifiable, and the defendant must be acquitted."

The court gave the first of these, adding, however, these words: "If there was imminent danger of such design of inflicting great personal injury being accomplished;" and refused the other. To the modification of the one and the refusal to give the other the defendant excepted.

Each of these requests is incorrect, in that it leaves out of account the necessity, or, to the defendant, the *apparent* necessity, of the killing, to prevent the felony or great bodily harm. The law concedes the right to kill in self-defence, but only in extremity, and when no other practicable means to avoid the threatened harm are apparent

to the person resorting to the right. If it be practicable, and is so apparent to him, to repel the attempt by other means than by killing his assailant, he is bound to do so. And all the authorities are agreed that ordinarily, as an element of legal self-defence in cases of personal conflict, the party killing must escape by retreat, unless prevented by some impediment or by the fierceness of the assault. In *State* v. *Shippey,* 10 Minn. 178, (223,) this court said: "Where the party has not retreated from or attempted to shun the combat, but has, as in this case, unnecessarily entered into it, his act is not one of self-defence."

The trial, having been begun before, was proceeded with and closed on, the 22nd day of February, Washington's birthday. It is claimed this rendered the trial void. The statute (Gen. St. 1878, *c.* 124, § 1,) provides "that the twenty-second day of February, the anniversary of the birthday of Washington, be observed in this state as a national holiday each and every year hereafter; that no public business, except in case of necessity, shall be transacted on that day; and that no civil process shall be served on that day." The transaction of public business on that day is lawful, and the thing done valid, "in case of necessity." Who shall judge of the necessity? Shall it be open to be called in question whenever and wherever the effect of the thing done is to be considered? If so, the same act might be held legal in one case and illegal in another. The evils and public inconvenience that might result from such a rule may be imagined. In the case of a court, at least, the necessity of transacting the particular business on that day must be conclusively presumed to have been presented to and passed upon by it; and the only practicable rule is to hold its decision on that question final.

Judgment affirmed.