## State of Minnesota vs. Henry Rheams.

### July 13, 1885.

Criminal Law—Justifiable Homicide—Self-Defence.—Homicide is not justifiable as an act of self-defence from an assault threatening bodily harm, if it is apparent to the person assailed that the threatened injury may be otherwise avoided, as by retreating.

Same—Evidence—Charge to Jury.—Evidence upon the trial of an indictment for murder considered as showing that the killing, as an act of self-defence, was obviously unnecessary. Evidence deemed legally insufficient to show a justification. A charge to the jury to that effect held not error.

Same—Trial—Province of Court and of Jury.—It is the duty of the court to declare the law to the jury in criminal as well as in civil cases. Whether the evidence has a tendency to prove any fact in issue in a criminal cause is for the determination of the court; not so as to the weight of evidence.

Appeal by defendant from an order of the district court for Clay county, *Stearns,* J., presiding, refusing a new trial, after a verdict finding the defendant guilty of manslaughter in the second degree.

*Mosness & Douglas,* for appellant.

*William J. Hahn,* Attorney General, and *J. M. Martin,* for the State.

Dickinson, J. The defendant, having been indicted for murder in the first degree, was found guilty of manslaughter in the second degree. The alleged error to be considered upon this appeal arises upon the instructions of the court to the jury, in which the court charged, in effect, that the case was not one of justifiable homicide, and that

there was no evidence showing a justification. By a bill of exceptions a portion of the evidence is before us, which is claimed to show that the homicide, which is not denied, was committed in self-defence, and was justifiable. We are therefore to consider whether the evidence tended to sustain this defence.

The facts most favorable to the defendant, as presented by this evidence, may be thus briefly stated: The defendant resided five miles from the village of Glyndon, where the homicide was committed. On this day he had come to Glyndon with his team, another man, Sandquist, accompanying him. A few minutes before the killing of deceased, the defendant had had difficulty with one *George* Chase, a brother of the deceased, and had stabbed him with a knife, after which George had threatened to kill the defendant. The parties, however, then separated, and the defendant and Sandquist went to their team, being then ready to return home. The defendant testifies that he was afraid of being overtaken on the road and killed, and therefore, leaving his team, he went back through the street, where he again encountered George Chase, whom he passed, and going to a store procured a revolver, which he caused to be loaded. Putting this in his pocket, he went from the store into the street. At this time the deceased, *Frank* Chase, approached him, angrily saying, "You  *  *  *, what did you stab my brother for?" After some warning from the defendant to let him alone, the deceased said, "Damn you, I can thrash you, and I will thrash you." George Chase was near by, and urged on the deceased. The defendant then drew the revolver and fired it into the air, further warning the deceased to keep away from him. The deceased sprang forward as though to seize the defendant. The defendant ran away, and as he ran, pursued by the deceased, he *immediately* commenced shooting at the latter, turning to aim and fire, and then continuing his flight. This was continued until the deceased fell, mortally wounded. The parties were then from five to ten feet apart. The defendant thus fired three or more times *at* the deceased. As they ran in this manner the deceased gained somewhat upon the defendant. The defendant was a man 32 years of age, weighing only 120 pounds, but, so far as appears, possessed of ordinary physical vigor. The deceased was a

strong man, taller and larger framed than the defendant, weighing about 200 pounds. He was not armed in any manner, so far as appeared.

In reviewing the action of the court declaring to the jury that the evidence did not show a justification, we must assume that the defendant was, in fact, acting upon the defensive, and that he did not himself provoke the attack of Chase, or seek an occasion for killing him. We will also assume, although we are not clearly satisfied that the evidence sustains the assumption, that the defendant believed that he was threatened with great bodily harm from his assailant, and not a simple battery; and that the circumstances were such as to justify a man of ordinary fortitude in so believing. But more than this is necessary to sustain the defence of justification. In *State* v. *Sorenson,* 32 Minn. 118, it was declared that the right to kill an assailant in self-defence can only be resorted to in extremity, and when no other practicable means to avoid the threatened harm are apparent to the person assailed; and the duty was recognized, in a case such as we have assumed this to be, to escape by retreat, unless that is prevented by some impediment, or by the fierceness of the assault, rather than to take the life of the aggressor.

In view of this duty on the part of the defendant, the evidence falls short of showing a justification. The assault was in the day-time, in the village street. The deceased was unarmed, while the defendant had a loaded revolver. When the defendant commenced firing at the deceased the parties were so far apart that the opportunity for retreat was perfectly apparent, and it was equally apparent that, if the defendant should avail himself of that opportunity, the danger of personal injury was not immediate. He was not surprised by an assault so suddenly made that he had no time to consider as to the means of escape. He was expecting such an assault, and had prepared himself to meet it. He knew that the way of retreat through the public street was open. His weapon was in his hand, and had been once discharged before the deceased attempted to touch him. Possessed of the advantage of being thus armed, notwithstanding the greater physical power of the deceased, and with the obvious opportunity for avoiding the threatened injury, the law forbade that he should attempt

the life of his assailant, for the necessity was not then apparent. It is true that he ran away from Chase as the latter came after him, but the circumstances attending the flight deprive it of the character of a real attempt by that means to avoid the necessity for taking the life of the aggressor. So far as the question under consideration is concerned, he might as well have stood in his tracks without retreating, and have killed Chase as he approached him. His *duty* was to flee, and thus avoid the necessity for killing his adversary. His *act* was to flee, and *at the same time,* and before the necessity became apparent, to kill his adversary. He commenced shooting immediately upon the commencement of the assault, and continued shooting, unnecessarily retarding his own flight by turning to aim and fire, until his pursuer fell. It seems at least probable that if the defendant had not thus retarded his flight, he would have completely escaped from chase; for his own testimony is: "I can hardly tell whether one or the other gained, but I think we kept pretty even, or once in a while he gained."

Taking the evidence relied upon by the defendant to be true, we think that it was legally insufficient to show a justification. This being so, it was the province of the court to so instruct the jury. Such an instruction was a declaration of the *law,* and not an invasion of the province of the jury to determine the *facts.* In *State* v. *Taunt,* 16 Minn. 99, (109,) it was said (p. 104:) "Where there is testimony which has any legal effect, it would be error in the court to determine the weight of it, or the fact which it did or did not ascertain. But whether evidence tends to prove anything pertinent to the issue is a question for the court." See, also, 1 Greenl. Ev. § 49; *Chandler* v. *Von Roeder,* 24 How. 224; *Garnett* v. *Kirkman,* 33 Miss. 389.

It is the duty of the court to declare the law in criminal cases as well as in civil, and the jury has no right in either class of cases to present a verdict without regard to the law so declared, and by which their judgment should be controlled. Gen. St. 1878, *c.* 114, § 11; *Com.* v. *Anthes,* 5 Gray, 185; *Com.* v. *Rock,* 10 Gray, 4; *Pierce* v. *State,* 13 N. H. 536; *Lord* v. *State,* 16 N. H. 325; *Duffy* v. *People,* 26 N. Y. 588; *U. S.* v. *Battiste,* 2 Sumner, 240; 1 Greenl. Ev. § 49, notes, and cases cited.

The order refusing a new trial is affirmed, and the cause remanded to the district court.

BERRY, J. Upon all the relevant testimony reported in the bill of exceptions in this case, (and it seems to me that there is some of importance which is not stated or recited in the majority opinion,) I think the question of justifiable homicide should have been submitted to the jury, and that the refusal to so submit was error.