CASE 53 —PROSECUTION OF HENRY HELLARD FOR MANSLAUGHTER.—JAN. 12.

# Hellard v. Commonwealth.

APPEAL FROM ROCKCASTLE CIRCUIT COURT—M. L. JARVIS, CIRCUIT JUDGE.

DEFENDANT CONVICTED AND APPEALS.   AFFIRMED.

HOMICIDE—MUTUAL AND WILLING COMBAT—JURY QUESTION—ABANDONMENT—EVIDENCE—ADMISSIBILITY—CRIMINAL LAW—WITNESS—IMPEACHMENT—CROSS-EXAMINATION.

1  On a prosecution for homicide, where the evidence showed that deceased accosted defendant with an insulting remark, and invited him to "come out and take his medicine," meaning that the speaker was prepared to fight, and was challenging defendant to a combat; that defendant, without saying anything, went into his house, got a pistol, and returned, when he and deceased engaged in a shooting match till deceased threw down his gun and picked up an ax, and continued to fight with it, defendant retreating and shooting as he went—the question whether the two engaged in a mutual and willing affray was properly submitted to the jury.

2. Where two persons engage in a mutual combat with pistols, one

who retreats, but continues shooting as he does so, is not entitled to claim an abandonment of the fight merely because he retreated.

3. Where defendant in a prosecution for homicide was permitted to testify that he was acquainted with deceased's general reputation for peace and violence, and that it was bad, he was not entitled to base error on the exclusion of his testimony, whether he knew deceased's character as to peace and quiet.

4. On a prosecution for homicide, a witness who testified to defendant's general reputation tending to impeach defendant as a witness could not be asked on cross-examination if he had not himself been impeached.

5. On a prosecution for homicide, where threats against defendant's life by deceased, and that they were communicated to defendant, were proved by defendant and his informants, it was not error to exclude a question asked defendant as to whether any one had informed him that deceased would kill him.

6. Where a witness did finally testify to the facts which the court refused when he was asked certain leading questions concerning them by defendant, whose witness he. was, the refusal was not prejudicial error, even though the witness was hostile.

R. M. JOHNSON and C. C. WILLIAMS, ATTORNEYS FOR APPELLANT.

1. We contend that the court erred in not allowing the defendant to prove the character of deceased for peace and quiet or for that of a dangerous man.

2. The court erred in refusing to allow the defendant to ask a witness for the Commonwealth if he had not been impeached three times, and if he had not been convicted three times of moonshining.

3. The court erred in allowing the prosecuting witness to state that one Johnson, just after the difficulty, shot at him (the witness) when there was no evidence that said Johnson had any connection with the difficulty.

4. The court erred in assuming in the instructions that at time of the killing the parties were engaged in a mutual combat, which was not warranted by the evidence, and was prejudicial to the defendant.

### AUTHORITIES CITED.

26 Ky. Law Rep., 40; 3 Ore., 74; Blimm v. Com., 7 Bush, 329; State v. Sterrett, 68 Ia., 76; State v. Cross, 68 Ia., 180; State v. Lee, 22 Minn., 407; 5 Am. & Eng. Ency. of Law, 873; Roberson's Ky. Crim. Law & Proc., vol. 1, p. 303; Ky. Digest, vol. 1, p. 30; Payne v. Com., 1 Met., 373; 5 Am. & Eng. Ency. of Law, 580;

Hellard v. Commonwealth.

99 Ky., 373, 374; 7 Am. & Eng. Ency. of Law, 109; 1 Greenleaf on Ev., 512; 11 Am. & Eng. Ency. of Law, 505; 1 Crim. Defenses, 469; 21 Am. & Eng. Ency. of Law (2d ed.), 248; Feltner v. Com., 23 Ky. Law Rep., 1112; Smaltz v. Com., 3 Bush, 33; Cook v. Com., 10 Ky. Law Rep., 202; McClernard v. Com., 11 Ky. Law Rep., 311; Costigan v. Com., 11 Ky. Law Rep., 617; Starr v. Com., 16 Ky. Law Rep., 843.

N. B. HAYS, ATTORNEY GENERAL, AND C. H. MORRIS, ATTORNEYS FOR APPELLEES.

1. While the record is not as free from fault as perhaps it should be, in the admission and rejection of testimony, we submit that the court's ruling on the questions presented will be found to be substantially correct, no error having been committed that affects the substantial rights of the appellant.

2. The instructions complained of were correctly given by the court, the evidence showing that the appellant first assaulted deceased by shooting at him twice, and he in fact never abandoned the difficulty in good faith, but ran around the house in order to take shelter for himself behind it, and to kill the deceased as he did.   If, after he first fired the two shots, he in good faith abandoned the difficulty and ran around the house to avoid the deceased, then, although he did first shoot, when pursued to the wall by deceased he had the right to defend himself and the right of self-defense was thereby restored.   As to who brought on the difficulty, and as to whether or not, if appellant did bring it on, he thereafter abandoned it in good faith, were facts for the jury to decide from the proof under the law as defined in said instructions.   Johnson v. Com., 94 Ky., 78; Lightfoot v. Com., 80 Ky., 516; Oder v. Com., 80 Ky., 32; Terrill v. Com, 13 Bush, 256.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellant appeals from a judgment convicting him of manslaughter.   The case, as made out by the prosecution, is that appellant either began an assault on the man he killed, Abe Drew, and prosecuted it up to the fatal shooting, or that he and the deceased mutually and willingly engaged in the affray resulting in the homicide.   In either state of case appellant would be guilty of murder or manslaughter, dependent upon the presence or absence of malice on his part

in engaging in the fight. Appellant's version is that he was assaulted by the decedent, and had to shoot and did shoot his assailant in his necessary self-defense. The conflicting theories were submitted to the jury under appropriate instructions. It was the jury's province—in no sense ours—to pass upon the credibility of the witnesses and the weight to be attached to their testimony. The evidence on behalf of the prosecution is abundant to sustain the verdict. Whether there was any evidence to justify submitting to the jury the question of a mutual and willing affray, it seems to us sufficient to say that there was considerable evidence to the effect that Drew, the man killed, accosted appellant with an insulting remark, and invited him to "come out and take his medicine," meaning that the speaker was prepared to fight, and was challenging appellant to a combat. Appellant, without saying anything, went into his house, got a pistol, and returned, when he and Drew engaged in a shooting match till Drew threw down his gun, when he picked up an ax and continued to fight with it, appellant retreating, and shooting as he went. The evidence justified the submission of that phase of the case to the jury as was done.

Appellant contends that he abandoned the fight in good faith, even if it be considered that he begun or mutually and willingly engaged in it. That he retreated seems certain. But a retreat is not necessarily an abandonment. It may be only the falling back on a better position, or for strategic reasons, with intention to continue the battle when the advantage warranted it. In such case an assailant who has wrongfully begun a fight can not disarm his adversary of his legal right to pursue his own advantage till his safety is assured. The fight must be abandoned in good faith and in fact. It must be something more than a mere mental determination to quit, even though accompanied with a retro-

grade movement. It ought to apprise the other party that his assailant has quit the fight, and has relieved him of the necessity for defense which had been imposed upon him by the assailant's conduct. If this were not so, then one in the wrong, who has put in jeopardy the life of one assaulted by him, and by appearances has produced upon the assaulted a reasonable apprehension of such danger, under which he has the legal right to fight to the death in his defense, could by his thought change the rightful defense to a criminal act, for changing position alone may not at all indicate that there is to be a cessation of hostilities. The person who has been assaulted, and who under stress of necessity, must act quickly and certainly, ought not to be subjected to the further hazard by his wrongful adversary of having to guess correctly whether a retreating movement is to better the latter's position in the fight or is an abandonment of it. He who creates appearances of necessity for action should bear the burden of relieving the situation of its threatening aspect by appearances equally reasonable in their assurance. The doctrine of self-defense, it must be remembered, rests both upon actual necessity and apparent necessity. An abandonment of a fight must, therefore, relieve the other party of both actual danger and of such appearance of danger as, operating upon a reasonable mind similarly situated, ought to relieve it of apprehension of immediate or impending danger from that assault. If the person assaulted thereafter renew the conflict, or continue it, then the original assailant's right of self-defense attaches as if he had not begun it. In this case the instruction merely left to the jury whether appellant had abandoned the fight, if he had begun it mutually and willingly engaged in it. In this it was more fa-

vorable to appellant than he was entitled to, as indicated above.

While testifying for himself appellant was asked whether or not he knew Abe Drew's "character as to peace and quiet." The court sustained an objection to the question. Appellant avowed that his answer would have been that he knew him to be a dangerous man. Appellant was permitted, however, to testify that he was acquainted with Drew's general reputation for peace and violence, and that it was bad. This got before the jury all that was involved in the other question. If Drew was notoriously a dangerous, quarrelsome man, and if appellant knew that fact, all of which was thus placed before the jury, every purpose that could have been served by the excluded evidence had it been admitted is answered. The general rule is that the general reputation only of the party can be inquired into. Had it not appeared by appellant's testimony that Drew was a violent and dangerous man, or had it appeared on the contrary that he was a peaceable man, it might have been permissible for the accused to show that he personally knew that he was a man of violent passion and temper, and that he always went armed. 1 Roberson's Criminal Law and Pro., 303; Payne v. Commonwealth, 1 Metc., 373.

A number of witnesses testified to appellant's general reputation, tending to impeach him as a witness. Among the number was one John Martin, who was asked on cross-examination: "Is it not a fact that you have been impeached three times in Jackson county?" To impeach an impeaching witness by proof that he has likewise a bad moral reputation, it is not competent to do so in the manner attempted. If one without personal knowledge of the witness' general reputation had undertaken to say that he had heard that he had been impeached in some other proceeding, manifestly the

Heliard v. Commonwealth

testimony would be incompetent in form, but not more so than that rejected above. It must be deemed as collateral matter to the issue of the suit on trial.

Appellant was also asked, while testifying as a witness for himself, whether any one had told him or informed him that Drew would kill him. An objection to the question was sustained. As put, it does not appear but what it was intended to evoke from the witness whether some person had not told appellant, as a matter of opinion or belief, that Drew would kill him; which was clearly irrelevant; that Drew made threats against appellant's life, and that they were communicated to him, were allowed to be proved by appellant and by his informants.

The witness Hubbard did finally testify to the facts which the court refused when he was asked certain leading questions concerning them by appellant, whose witness he was. So, although under the rule that a hostile witness may have leading questions put to him, the question excluded ought to have been allowed, appellant was not prejudiced by the court's ruling.

Whereupon the judgment is affirmed.