# STATE v. GEORGE ALLEN GRAHAM.

195 N. W. 2d 442.

February 18, 1972—No. 41744.

*C. Paul Jones,* State Public Defender, and *G. Thomas Mac-Intosh II* and *Edgar H. Rex, Jr.,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *Paul J. Tschida,* Special Assistant Attorney General, *J. Jerome Kluck,* County Attorney, and *John O. Sonsteng* and *George L. May,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

KELLY, JUSTICE.

Defendant appeals from an order of the district court denying a motion for a new trial after his conviction for first-degree manslaughter. The issues presented for review are whether the trial court erred by refusing to instruct the jury that an aggressor who withdraws may regain the right to assert self-defense and whether evidence relating to the bad character of the deceased was properly excluded. We affirm.

The chain of events which led to the fatal encounter began in the evening of July 27, 1968, when a group calling itself the El Foresteros Motorcycle Club met in a park in the city of Hastings for an all-night drinking party. After midnight, a group of young men from Hastings, including defendant, went to the park to associate with the cyclists. Toward dawn several of the cyclists apparently began harassing the Hastings men. Defendant's watch was taken, and he fled from the park, leaving his car. One of the Hastings men testified that one of the cyclists had a gun. Concerned about his car, defendant returned to the park armed with a shotgun. Within the next hour he fired several shots into the cyclists' camp. When this failed to intimidate the cyclists, defendant and a companion who was then carrying the shotgun began to walk back to town.

While leaving the park the two Hastings men suddenly noticed deceased, one Michael Roger Tracy, walking toward them between 75 and 100 feet away. Defendant warned deceased to stay away and slowly walked backwards. Deceased, however, advanced more quickly, holding a stick or a club. Defendant told his companion to shoot, but his companion refused. Defendant then took the gun and shot deceased at a distance of about 60 feet. Defendant testified that he shot in self-defense and that he could not fire a warning shot because the gun was broken and could only be fired in a single-shot manner. Defendant stated

that he did not run away because he thought other cyclists would catch him.

■ The judge gave instructions relating to self-defense as follows:

"The legal excuse of self-defense is available only to those who act honestly and in good faith and it requires the following elements: the absence of aggression or provocation on the part of the person charged with the killing. An actual and honest belief on the part of the person charged that he is in eminent [sic] danger of death or great bodily harm. There must be the existence of reasonable grounds for such belief and the duty of the person charged to retreat or avoid the danger, if reasonably possible."

These instructions are very similar to those we approved in State v. Johnson, 277 Minn. 368, 373, 152 N. W. 2d 529, 532 (1967).

The trial court refused to give the following requested instruction:

"Self defense is not available to one who provokes the conflict. If you find that defendant in the first instance provoked the conflict, but thereafter actually and in good faith withdrew from the conflict, then upon his withdrawal he ceased to be a wrongdoer and his right of self defense revived. If [deceased] had reasonable grounds for believing that defendant had so withdrawn, the withdrawal is sufficient even though the fact was not clearly evidenced."

We believe the trial judge should have given the requested instruction. We agree with defendant's contention that an aggressor who has withdrawn from the conflict may assert the defense of self-defense. The deceased attacker, however, must know or have reasonable grounds to know that the former aggressor has withdrawn. A past aggressor must clearly evince his desire to make a good-faith withdrawal from the conflict.[1]

---

[1] See, Hellard v. Commonwealth, 119 Ky. 445, 84 S. W. 329 (1905).

The question of whether the right of self-defense is revived by the withdrawal of an aggressor has not been ruled upon before by this court. States that have reached the issue have found such a revival.[2] We agree with their rulings. Instructions to this effect should be given when there is evidence to support that theory of defense.

■ The failure to give the requested instruction in this case constituted harmless error. The facts surrounding the shooting are not in dispute. Defendant and his companion saw deceased walking toward them at a distance of about 75 to 100 feet. As deceased advanced, defendant urged his companion to fire the shotgun. When his companion refused, defendant grabbed the gun and fired the fatal shot. The distance was then about 60 feet. It is quite apparent that defendant did not fulfill his duty to retreat or avoid the danger.

The facts in this case are similar to State v. Rheams, 34 Minn. 18, 24 N. W. 302 (1885). There, deceased, a large strong unarmed man, was chasing defendant. The smaller defendant, while running away, turned and shot deceased. This court held that defendant had not fulfilled his duty to retreat (34 Minn. 20, 24 N. W. 303):

"* * * When the defendant commenced firing at the deceased the parties were so far apart that the opportunity for retreat was perfectly apparent, and it was equally apparent that, if the defendant should avail himself of that opportunity, the danger of personal injury was not immediate. * * * His *duty* was to flee, and thus avoid the necessity for killing his adversary."

The Rheams case was quoted with approval in State v. Boyce, 284 Minn. 242, 258, 170 N. W. 2d 104, 114 (1969). In the instant

---

[2] See, e. g., Rowe v. United States, 164 U. S. 546, 17 S. Ct. 172, 41 L. ed. 547 (1896); State v. Mayberry, 360 Mo. 35, 226 S. W. 2d 725 (1950); State v. Williams, 337 Mo. 884, 87 S. W. 2d 175 (1935); State v. Correll, 228 N. C. 28, 44 S. E. 2d 334 (1947); State v. Reid, 32 Ohio O. 2d 316, 3 Ohio App. 2d 215, 210 N. E. 2d 142 (1965); Dodson v. Commonwealth, 159 Va. 976, 167 S. E. 260 (1933).

case, we believe that defendant had a duty to run away from the advancing deceased. A careful review of the evidence demonstrates that the central issue of the trial was whether defendant had acted as a reasonable man when confronted by deceased. Defendant was convicted because the jury answered that question in the negative. We do not believe that the jury considered only whether defendant was an aggressor. Defendant admitted that he was once an aggressor and the four-day trial did not contest that. We cannot believe that the jury ignored four days of testimony to base its decision on an uncontested issue.

Under the circumstances of this case, the failure to instruct the jury regarding the revival of an aggressor's right to assert self-defense was not prejudicial. Erroneous instructions which are not prejudicial are not sufficient grounds for a new trial.[3]

■ At the trial the defense offered the testimony of a psychiatrist and two young men who had known deceased. They were to testify regarding deceased's reputation for violence, turbulence, viciousness, and quarrelsomeness. Medical records from Willmar State Hospital and Southwestern Mental Health Center were also offered. Finally, the defense offered evidence of judgments of conviction against deceased for simple assault and aggravated criminal damage to property and evidence that deceased had been a professional boxer. All the above evidence was rejected and defendant seeks review of the trial court's ruling.

On a self-defense plea, evidence of the deceased's character may be shown only if defendant knew deceased or to prove that deceased attacked defendant.[4] In the instant case defendant did not know and had not seen deceased before the confrontation so the evidence was inadmissible to show the reasonableness of defendant's reaction. When the facts are in controversy, a de-

---

[3] Barness v. State, 290 Minn. 509, 187 N. W. 2d 111 (1971); State v. Everson, 286 Minn. 246, 175 N. W. 2d 503 (1970).

[4] State v. Keaton, 258 Minn. 359, 104 N. W. 2d 650 (1960); State v. Dumphey, 4 Minn. 340 (438) (1860).

fendant may offer such evidence to prove that deceased was the aggressor and precipitated the confrontation.

We do not believe that the trial court erred in excluding the evidence. No dispute of fact existed concerning the confrontation. All testimony agreed that deceased advanced toward defendant with a club or a stick in his hands. The only issue of fact was whether defendant acted reasonably by refusing to run away. Since no issue of fact arose concerning the confrontation, the evidence of deceased's character had very little probative value. Whatever probative value existed was clearly outweighed by the prejudicial effect it would have on the state's case. A fair reading of the testimony suggests that the defense sought to make the deceased worth killing. Admission of the offered testimony would have contributed to that dubious tactic with little if any addition to the jury's understanding of the incident.

Defendant cites a number of cases in which such evidence was admitted although defendant and deceased were strangers.[5] Examination of these cases reveals that the object sought by the testimony was to prove which party was the aggressor. These cases are not relevant where the facts concerning the confrontation are not in dispute.

Defendant notes several minor conflicts in the testimony concerning the confrontation. None of these conflicts will justify admission of the offered testimony. Whether deceased was carrying a stick or a club is hardly a crucial dispute. Whether deceased had been drinking several hours before the incident is not really relevant. No dispute existed where defendant testified that deceased started running as he came closer and a cyclist testified that deceased had started his advance by walking until he was out of the cyclist's sight. Finally, a dispute did exist con-

---

[5] See, Evans v. United States, 107 App. D. C. 324, 277 F. 2d 354 (1960); State v. Griffin, 99 Ariz. 43, 406 P. 2d 397 (1965); Cole v. State, 193 So. 2d 47 (Fla. App. 1966); State v. Wilson, 236 Iowa 429, 19 N. W. 2d 232 (1945); State v. Jones, 48 Mont. 505, 139 P. 441 (1914); State v. Thompson, 49 Ore. 46, 88 P. 583 (1907).

cerning the distance at which deceased was shot: Defendant stated 30 feet; a ballistics expert believed it to be 60 feet. This dispute, however, is immaterial since the only important distance is that which separated the two at the commencement of deceased's advance when the opportunity for retreat was apparent. Moreover, admission of evidence of deceased's character would have no effect in resolving the dispute. The order denying a new trial is affirmed.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.