**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1424**

State of Minnesota,
Respondent,

vs.

Julian Daniel Valdez,
Appellant.

**Filed October 16, 2023
Reversed and remanded
Johnson, Judge
Concurring specially, Kirk, Judge**[*]

Renville County District Court
File No. 65-CR-21-248

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kelsie Kingstrom, Renville County Attorney, Olivia, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SYLLABUS**

In giving a jury instruction concerning the defense-of-others defense, the district court erred by instructing the jury that the defendant had a duty to retreat or avoid the danger if reasonably possible.

**OPINION**

**JOHNSON**, Judge

Julian Daniel Valdez shot and killed a man who had threatened to kill Valdez's stepbrother, had tackled the stepbrother, and was assaulting the stepbrother as he lay on the ground. At trial, the district court instructed the jury on Valdez's defense-of-others defense by stating that Valdez had "a duty to retreat or avoid the danger if reasonably possible." A Renville County jury found Valdez guilty of second-degree unintentional murder. We conclude that the district court erred by instructing the jury that Valdez's defense-of-others defense is subject to a duty to retreat, which effectively would negate his right to use reasonable force to defend his stepbrother. We also conclude that the error is not harmless. Therefore, we reverse the conviction and remand for a new trial.

**FACTS**

On August 5, 2021, Valdez spent the day with his stepbrother, Chris Munguia, in Valdez's detached garage, which faces an alley near a side street in the city of Renville. The garage was furnished with a couch, a flat-top grill, a pool table, a television, and several tables and chairs. Valdez and Munguia grilled food, drank beer, and played pool. At one point during the day, Pablo Gutierrez was a passenger in his sister's vehicle as she drove

2

past Valdez's home and garage. Munguia made some type of gesture to Gutierrez as Gutierrez passed by Valdez's garage.

That evening, Gutierrez walked from his sister's house to Valdez's garage and entered the garage through an open garage door. Valdez recognized Gutierrez because he had seen Gutierrez fight with another person in the nearby alley three years earlier. Valdez noticed that Gutierrez was sweaty and breathing heavily and appeared to be angry. Gutierrez asked Valdez if Munguia was there; Valdez told him that Munguia was inside the house. Valdez went inside the house to get Munguia and also retrieved his .45-caliber pistol from a safe. When Munguia came to the garage, he observed that Gutierrez was agitated. Munguia offered Gutierrez a drink and asked him to play pool with them, which calmed him down.

As the three men were preparing to play pool, Valdez stood across the pool table from Gutierrez, who stood next to Munguia. Valdez testified at trial as follows. He and Munguia were talking and laughing when Gutierrez developed a "mean face," apparently because Gutierrez believed that they were talking about him. Gutierrez threatened to kill them. Valdez showed Gutierrez his pistol and told him to get out. Gutierrez threatened to "jump the table," slap Valdez, take the gun, and shoot him with it. Munguia told Gutierrez to calm down. Gutierrez "came at" Munguia, threatening to kill him too. Munguia swung a pool cue, which hit Gutierrez in his left ear, but it did not stop Gutierrez from coming after Munguia and choking him. Gutierrez tackled Munguia outside the garage door, causing Munguia to trip over trash bags and fall backwards into the alley with Gutierrez on top of him. Gutierrez was much larger than Munguia. Munguia was "pleading for his

3

life" and told Valdez to shoot Gutierrez. Valdez stepped out of the garage and fired his pistol at Gutierrez once from six or seven feet away. Gutierrez stood up, said that he had been shot, and fell down.

Munguia testified at trial to a similar version of the incident, as follows. Gutierrez became aggressive toward him and Valdez, and they repeatedly asked Gutierrez to leave. Gutierrez threatened to jump over the table, take the gun, shoot Valdez in the head, and kill Munguia. Gutierrez lunged at and hit Munguia. Munguia was able to push Gutierrez away and to hit him with the heavy end of a pool cue, but Gutierrez was not dazed. Gutierrez tackled Munguia to the ground at the garage entrance and smothered Munguia's face. Munguia begged Valdez to shoot Gutierrez. Valdez fired his pistol. Gutierrez stood up and then stumbled and fell to the ground. Munguia removed his own shirt and attempted to render aid to Gutierrez by applying pressure to his wounds. Munguia called 911.

When deputies arrived, they found Gutierrez lying in the alley, without a pulse. Munguia was kneeling near Gutierrez, and Valdez was standing near the garage.

The state charged Valdez with second-degree intentional murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2020), and second-degree unintentional murder, in violation of Minn. Stat. § 609.19, subd. 2(1) (2020).

In April 2022, approximately one month before trial, Valdez filed a motion *in limine* in which he requested jury instructions on defense of property, defense of dwelling, and defense of self or others. With respect to the defense-of-others defense, Valdez specifically requested that the district court omit any mention of a duty to retreat on the ground that Munguia was unable to retreat. In response, the state argued, among other things, that

4

Valdez was not entitled to the instructions he sought because he made no effort to retreat. After a hearing on the motion, the district court reserved ruling on whether the requested instruction was warranted but ruled that any such instruction would state that Valdez had a duty to retreat.

The case was tried to a jury on four days in May 2022. The state called 17 witnesses. Valdez called four witnesses, including himself and Munguia. On both direct and cross-examination, Valdez was asked why he did not take defensive actions other than shooting Gutierrez. He responded that he had tendonitis in his wrist, which caused pain in his forearm and required him to wear a brace. He also testified that Munguia's attempt to stop Gutierrez with a pool cue was ineffective. He testified further that he was capable of running away but did not want to leave Munguia behind while he was being attacked by Gutierrez. Valdez acknowledged that he could have kicked Gutierrez and that his garage contained various other items that could have been used as weapons, such as golf clubs.

After both parties had rested on the third day of trial, Valdez's attorney renewed his request for an instruction concerning his self-defense and defense-of-others defenses. The district court ruled that Valdez had satisfied his burden of production and was entitled to the instructions he sought. The following morning, Valdez's attorney asked the district court to reconsider its earlier ruling that the instruction on self-defense and defense-of-others would state that he had a duty to retreat. The district court reiterated its prior ruling.

In closing arguments, the prosecutor argued, among other things, that Valdez used unreasonable force when he shot Gutierrez and that he failed to retreat. Valdez's attorney argued, among other things, that Valdez's use of force was reasonable when he acted in

defense of Munguia. The district court instructed the jury that Valdez had "a duty to retreat or avoid the danger if reasonably possible."

The jury found Valdez not guilty of second-degree intentional murder but guilty of second-degree unintentional murder. The district court sentenced Valdez to 150 months of imprisonment. Valdez appeals.

**ISSUE**

Did the district court err in its jury instruction on Valdez's defense-of-others defense by instructing the jury that Valdez had a duty to retreat or avoid the danger if reasonably possible?

**ANALYSIS**

Valdez argues that the district court erred by instructing the jury that, with respect to his defense-of-others defense, he had a duty to retreat or avoid the danger if reasonably possible.

A district court must instruct a jury in a manner that "fairly and adequately explain[s] the law of the case." *State v. Peltier*, 874 N.W.2d 792, 797 (Minn. 2016). A district court errs if its jury instructions "confuse, mislead, or materially misstate the law." *State v. Vang*, 774 N.W.2d 566, 581 (Minn. 2009). An appellate court reviews jury instructions as a whole and seeks to determine whether they "accurately state the law in a manner that can be understood by the jury." *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). A district court is given "considerable latitude in selecting language for jury instructions." *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011) (quotation omitted).

6

Accordingly, appellate courts apply an abuse-of-discretion standard of review to a district court's jury instructions. *State v. Stay*, 935 N.W.2d 428, 430 (Minn. 2019).

**A.**

The defense-of-others defense is codified in a statute that authorizes the use of reasonable force in certain circumstances. *See* Minn. Stat. § 609.06 (2020). Specifically, the statute provides that "reasonable force may be used upon or toward the person of another without the other's consent when the following circumstances exist or the actor reasonably believes them to exist." Minn. Stat. § 609.06, subd. 1. One of the circumstances that follows is the circumstance in which reasonable force may be "used by any person in resisting or aiding another to resist an offense against the person." *Id.*, subd. 1(3).[1] The supreme court recently clarified that, consistent with the common law concerning self-defense, the term "offense against the person" is limited to "offenses carrying the threat of bodily harm." *State v. Lampkin*, 994 N.W.2d 280, 289 (Minn. 2023). The supreme court has described the statutory authorization to use reasonable force to resist such an offense as a "right." *State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014); *State v. Graham*, 195 N.W.2d 442, 444 (Minn. 1972).

---

[1]Another statute limits a person's right to use *deadly* force in self-defense or in defense of others: "The intentional taking of the life of another is not authorized by section 609.06, except when necessary in resisting or preventing an offense which the actor reasonably believes exposes the actor or another to great bodily harm or death, or preventing the commission of a felony in the actor's place of abode." Minn. Stat. § 609.065 (2020). The district court incorporated section 609.065 into its instructions on the charge of intentional second-degree murder. Because Valdez was acquitted of intentional second-degree murder, section 609.065 is not relevant on appeal.

Section 609.06, subdivision 1(3), does not expressly qualify the right to use reasonable force in self-defense or defense-of-others situations by imposing a duty to retreat instead of or before using reasonable force. Nonetheless, the caselaw is clear that a person has a duty to retreat before using reasonable force in self-defense. *See Devens*, 852 N.W.2d at 258. This is so because the supreme court has held that a criminal defendant is entitled to a jury instruction on a self-defense defense if the evidence is capable of proving each of four requirements:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm; (3) the existence of reasonable grounds for that belief; (4) the absence of a reasonable possibility of retreat to avoid the danger.

*Id.* (quotation omitted). If a defendant asserts a self-defense defense, the defendant has the initial burden of "going forward with evidence to support a claim of self-defense." *State v. Basting*, 572 N.W.2d 281, 286 (Minn. 1997). If the defendant satisfies that burden, the state bears the burden of disproving one or more of the requirements of the defense beyond a reasonable doubt. *Id.*

The same statute that authorizes the use of reasonable force in self-defense and defense-of-others situations also authorizes the use of reasonable force to resist a trespass or interference with real property. Minn. Stat. § 609.06, subd. 1(4) (2020). Consistent with the statute, the supreme court has recognized a common-law right to use reasonable force to protect one's dwelling. *State v. Carothers*, 594 N.W.2d 897, 899-900 (Minn. 1999). Minnesota caselaw is clear that, in a defense-of-dwelling situation, there is no duty to retreat. *Id.* at 900-03. The supreme court has reasoned that imposing a duty to retreat

8

in a defense-of-dwelling situation "would effectively preclude a person from preventing a felony in the home" and would "force people to leave their homes by the back door while their family members are exposed to danger and their houses are burgled." *Id.* at 901. The supreme court added, "A duty to retreat is incompatible with the right to prevent the commission of a felony within one's home." *Id.* Accordingly, the supreme court in *Carothers* reversed and remanded a felony-murder conviction on the ground that the district court erred by instructing the jury that the defendant had a duty to retreat from his own home when an intruder, who "had a reputation . . . as a violent and ruthless person," entered the defendant's home without permission and approached him in an aggressive manner. *Id.* at 898-99, 903-04.

The supreme court has not considered whether the right to use reasonable force to defend another person is subject to a duty to retreat. The supreme court has stated generally, in a footnote, that the defense-of-others defense "parallels" the self-defense defense. *State v. Granroth*, 200 N.W.2d 397, 399 n.2 (Minn. 1972). But there is no further guidance in precedential appellate opinions in Minnesota as to whether the right to use reasonable force to defend another person is subject to a duty to retreat.[2]

---

[2]This court has considered and rejected arguments that are similar to Valdez's argument. *See State v. Willis*, No. A11-1973, 2012 WL 5896752, at *3-4 (Minn. App. Nov. 26, 2012), *rev. denied.* (Minn. Feb. 19, 2013); *State v. Bishop*, No. A07-1435 & A08-1339, 2009 WL 1750631, at *4 (Minn. App. June 23, 2009), *rev. denied.* (Minn. Sept. 16, 2009). But this court's nonprecedential opinions are "not binding authority except as law of the case, res judicata or collateral estoppel." *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

## B.

In this case, the district court instructed the jury that Valdez is not guilty of the charge of unintentional second-degree murder if he "acted in defense of self or others as authorized by law." The district court further instructed the jury by summarizing each of the four requirements identified by the caselaw concerning self-defense. *See Devens*, 852 N.W.2d at 258. With respect to the fourth requirement, the instruction stated, "The Defendant has a duty to retreat or avoid the danger if reasonably possible."[3]

Valdez contends that the district court erred by including a duty to retreat in this instruction on the ground that, as a general matter, it would require a person to "leave the other person to fend for themselves" and, for that reason, would "effectively negate the right to defend another." He contends further that, in this specific case, Munguia "was unable to flee because he was being attacked by Gutierrez, who was on top of him." Valdez asserts that he should not have been required to retreat unless both he and Munguia "could have safely extricated themselves from Gutierrez's attack." In support of that assertion, he cites a well-known treatise, which states that the duty to retreat "must be assessed somewhat differently" in defense-of-others cases as compared to self-defense cases. 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.5(c), at 227 (3d ed. 2018). Specifically, the treatise states that "the ability of the defendant to retreat without risk to

---

[3]The district court's instruction is similar to a model jury instruction that is intended to apply to both self-defense and defense-of-others. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice: Jury Instruction Guides—Criminal* § 7.13, at 56-57 (Supp. 2022). We reiterate that model jury instructions "are not the law" and are merely an "attempt to summarize the law for the convenience of the parties and the [district] court." *State v. Pierce*, 792 N.W.2d 83, 86 (Minn. App. 2010).

himself should not control when the force is being used to protect another party who cannot retreat." *Id.* In response, the state contends merely that, because a duty to retreat applies to the defense of self-defense, and because the caselaw states that the law of defense-of-others "parallels" the law of self-defense, *see Granroth*, 200 N.W.2d at 399 n.2, a duty to retreat also applies to the defense-of-others defense.

We agree with Valdez that the district court's jury instruction is inconsistent with the statutory right to use reasonable force to aid another person in resisting an offense against that person that threatens bodily harm. The district court's instruction that Valdez had "a duty to retreat or avoid the danger if reasonably possible" informed jurors that Valdez was required to retreat if it was reasonably possible for him to do so, without regard for whether Munguia could have retreated and without regard for Munguia's well-being in the face of Gutierrez's ongoing attack. Valdez testified that he himself was able to run away from the confrontation but that Munguia was pinned underneath Gutierrez and, thus, unable to retreat. The practical effect of the district court's instruction would be to retroactively impose on Valdez a requirement that, to avoid criminal liability, he had to abandon Munguia and leave him in danger of bodily harm or death. The district court's instruction is inconsistent with Valdez's statutory right to defend Munguia against Gutierrez's attack. Our reasoning is consistent with *Carothers*, in which the supreme court held that there is no duty to retreat before using reasonable force to defend a dwelling. *See* 594 N.W.2d at 900-03.

Our reasoning also is consistent with the caselaw of other states in which this specific issue has arisen. In *Cleveland v. State*, 700 S.W.2d 761 (Tex. Ct. App. 1985), the

11

appellate court concluded that the trial court erred by instructing the jury that a defendant asserting a defense-of-others defense had a duty to retreat, reasoning that "if the actor is acting in defense of third persons, it is the position of the third person that is relevant." *Id.* at 762. The *Cleveland* court relied on *Crawford v. State*, 629 S.W.2d 165 (Tex. Ct. App. 1982), in which the appellate court concluded that the trial court erred by instructing the jury that the defendant asserting a defense-of-others defense had a duty to retreat, reasoning that such a duty "would require one who perceives another under attack by unlawful force, and believes that his intervention is immediately necessary to prevent the attack, to simply walk away if he can reasonably do so without injury to himself and leave the victim to the whims of the assailant." *Id.* at 167.[4] We are unaware of any foreign caselaw that imposes a duty to retreat on a person's right to defend another person from unlawful force without considering the other person's ability to retreat.[5]

---

[4]The *Crawford* and *Cleveland* opinions were issued when a Texas statute provided that, to establish the defense-of-others defense, a defendant must prove that "a reasonable person in the actor's situation would not have retreated." *Crawford*, 629 S.W.2d at 167 (quoting Tex. Penal Code § 9.32(2) (1974)); *see also Cleveland*, 700 S.W.2d at 762 n.1 (quoting Tex. Penal Code § 9.32(2) (1974)). That statute was amended in 2007 to expressly provide that, so long as certain conditions are satisfied, there is no duty to retreat from a threat of unlawful force. Tex. Penal Code Ann. § 9.32(c) (West 2022); Acts 2007, 80th Leg., ch. 1, § 3 (eff. Sept. 1, 2007).

[5]It appears that the relevant caselaw is limited because states vary widely with respect to whether and when a duty to retreat exists. In a majority of states, a person does *not* have a duty to retreat before defending either oneself or another person from a threat of unlawful force. *See* Paul H. Robinson et al., *The American Criminal Code: General Defenses*, 7 J. Legal Analysis 37, 56 & n.59 (2015). A few of the remaining states follow the Model Penal Code by requiring a person to retreat before using force to protect another person "unless he knows that he can thereby secure the complete safety of such other person." Model Penal Code § 3.05(2)(a) (Am. L.w Inst. 1985); *see also* Robinson et al., *supra*, at 56. In Massachusetts, a person has a duty to retreat before defending oneself but

The state asserts additional reasons why the challenged jury instruction is not erroneous. The state contends that Gutierrez likely would not have inflicted great bodily harm or death on Munguia, that Valdez could have tried to restrain Gutierrez by approaching him from behind while he was on top of Munguia, that Valdez could have used other implements that were available to him in the garage (such as a golf club, a pool stick, or tools) as makeshift weapons instead of using a firearm, and that Valdez used more force than was reasonable when he fired his pistol at Gutierrez. These arguments are not responsive to Valdez's argument. We are not asked to review the sufficiency of the evidence supporting the jury's verdict. Also, we are not asked to consider whether Valdez was entitled to a jury instruction on his defense-of-others defense. The district court ruled that he was entitled to such an instruction, and we take that ruling as given. We seek to determine only whether the district court erred in its selection of language for the instruction. Whether Valdez ultimately prevails on his defense-of-others defense is a matter for the jury to decide in a new trial on remand.

In sum, the district court's jury instruction concerning Valdez's defense-of-others defense is inconsistent with his statutory right to use reasonable force to defend Munguia from Gutierrez's attack. Consequently, the district court's jury instruction was a material misstatement of the applicable law. *See Peltier*, 874 N.W.2d at 797; *Vang*, 774 N.W.2d at 581. Thus, the district court erred by instructing the jury that, for purposes of Valdez's

---

not before defending another person. *Commonwealth v. Allen*, 48 N.E.3d 427, 435 & n.9 (Mass. 2016).

defense-of-others defense, he had a duty to retreat or avoid the danger if reasonably possible.

## C.

The state argues in the alternative that, if the district court erred in instructing the jury, the error is a harmless error. *See* Minn. R. Crim. P. 31.01. A defendant is entitled to a new trial due to an erroneous jury instruction "if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict." *State v. Glowacki*, 630 N.W.2d 392, 402 (Minn. 2001) (quotation omitted).

The state contends that the jury instruction did not have a significant impact on the verdict because Valdez's killing of Gutierrez was not justified. Specifically, the state contends that Valdez provoked Gutierrez by brandishing his firearm and that Valdez used unreasonable force by shooting Gutierrez in the back and killing him. Valdez anticipated the state's harmlessness argument in his principal brief, in which he argues that the district court's erroneous instruction is not a harmless error. Valdez notes that the prosecutor argued to the jury that Valdez did not retreat and that the state needed to disprove only one element of his defense. Valdez asserts that it is impossible to know whether the jury found him guilty because it rejected his version of the facts or because it accepted his version but felt obligated to find him guilty because he did not retreat.

In *Glowacki*, the district court erroneously instructed the jury that the defendant had a duty to "avoid the danger if reasonably possible" when acting in self-defense in his own home. 630 N.W.2d at 402. The supreme court reasoned that, "even if the jury accepted Glowacki's version of events, no reasonable juror could conclude that his use of force to

14

defend himself was reasonable." *Id.* at 403. Consequently, the supreme court concluded that "the erroneous instruction did not have a significant impact on the jury's verdict because Glowacki's use of force did not meet the reasonableness requirement of self-defense." *Id.* For that reason, the supreme court upheld the jury's guilty verdict. *Id.*

In *State v. Baird*, 654 N.W.2d 105 (Minn. 2002), the district court erroneously instructed the jury that the defendant had a duty to "retreat or avoid the danger if reasonably possible" when acting in self-defense in his own home. *Id.* at 114. The state argued that the error was not prejudicial because the defendant used excessive force such that "even a properly instructed jury could not have found" that the defendant's actions were justified. *Id.* But the supreme court, applying the plain-error test, rejected the state's argument. *Id.* The supreme court noted that the person whom Baird assaulted was holding a screwdriver in his hand such that "the jury could have concluded" that Baird's assault was justified. *Id.* The supreme court further reasoned:

> Under the circumstances, we conclude that it is simply impossible to determine whether the jury rejected Baird's version of the facts or whether it accepted his version but concluded that he was guilty nevertheless because he failed to retreat. If the jury had known that Baird did not have a duty to retreat, it is possible that it would have decided that Baird's actions were reasonable and taken in self-defense.

*Id.* For that reason, the supreme court concluded that Baird was entitled to a new trial. *Id.*

This case is more like *Baird* than *Glowacki*. Whether Valdez used reasonable force was a contested issue at trial. The prosecutor argued, among other things, that Valdez used unreasonable force when he shot Gutierrez and that he failed to retreat. Valdez's trial attorney argued, among other things, that Valdez's use of force was reasonable because

15

Gutierrez refused to leave when asked, was unfazed after being hit by a pool cue, and was attacking Munguia. Valdez's trial attorney did not respond to the prosecutor's argument concerning the absence of retreat, perhaps because the erroneous instruction did not allow an effective counter-argument on that issue. As in *Baird*, "it is simply impossible to determine" whether the jury's guilty verdict was based on Valdez's non-retreat or on other requirements of proof. *See* 654 N.W.2d at 114. Given the evidence and the arguments of counsel, we cannot determine beyond a reasonable doubt that the error did not have a significant impact on the jury's verdict.

Thus, the district court's erroneous jury instruction is not a harmless error.

## DECISION

The district court erred by instructing the jury, with respect to Valdez's defense-of-others defense to the charge of unintentional second-degree murder, that Valdez had a duty to retreat or avoid the danger if reasonably possible. The erroneous instruction is not a harmless error. Therefore, Valdez is entitled to a new trial.

**Reversed and remanded.**

**KIRK,** Judge (concurring specially)

While I agree with the majority decision to reverse Valdez's conviction and remand for a new trial, I write separately to highlight concerns about the state's argument that it had disproved other elements of Valdez's defense-of-others claim by demonstrating (1) that Valdez became the aggressor or provoked Gutierrez by displaying his pistol while telling Gutierrez to leave the garage, and (2) that the force used by Valdez against Gutierrez was unreasonable.

On the evening of the shooting, Valdez and his brother Munguia were spending time in their garage drinking, playing pool, and grilling. At about 8:30 p.m., while Munguia was in the house, a man who Valdez recognized from the community, but did not know, showed up at the garage uninvited. He was sweaty, breathing heavily, and seemed "mad." He seemed to be looking for Munguia, and so Valdez went to the house to get him. Gutierrez apparently believed that Munguia—who he had initially believed was someone else—had made a "gesture" towards him when he and his sister drove by the garage earlier that night. Despite a period of calm after Valdez and Munguia were able to deescalate his agitation, Gutierrez again became angry because he believed that they were laughing at him. Valdez testified that Gutierrez then threatened to kill them both. At this point, Valdez displayed his pistol—which he had retrieved from the home earlier when he went to find Munguia for Gutierrez—and ordered Gutierrez to leave. In response, Gutierrez threatened to "jump the table," slap Valdez, take the gun, and shoot him with it. Gutierrez was not deterred by Valdez and Munguia repeatedly ordering him to leave or by Valdez displaying

CS-1

his pistol. Instead, Gutierrez attacked Munguia, pinned him to the ground and began either smothering or choking him.[1]

At trial, and again on appeal, the state argued that Valdez became the aggressor in the confrontation and used unreasonable force when he "provoked [Gutierrez] by purposely brandishing a deadly weapon" and thus "escalated the situation" from a verbal confrontation to a physical one. As stated by the majority, to be entitled to assert a self-defense or defense-of-others defense, there must be, in relevant part: "(1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of . . . bodily harm; [and] (3) the existence of reasonable grounds for that belief." *State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014); *see also* Minn. Stat. § 609.06, subd. 1(3) (2020).

Here, Gutierrez verbally threatened to use deadly force against Valdez and Munguia. Such a threat of imminent danger entitled Valdez to respond by displaying his pistol, a weapon capable of the same deadly force threatened by Gutierrez, to deter Gutierrez from acting and to encourage him to leave the property. On these facts, I would conclude that Valdez did not become the aggressor by simply brandishing his pistol in response to Gutierrez's death threats and aggravated demeanor. *Cf. State v. Columbus*, 258 N.W.2d 122, 125 (Minn. 1977) ("The defendant became the aggressor by drawing, loading, and aiming the rifle . . . [because] he did so while in no imminent danger of any kind . . .

---

[1] At trial, a medical examiner testified that methamphetamine was discovered in Gutierrez's body. An investigator testified that methamphetamine is a stimulant that elevates blood pressure and pulse, often resulting in rapid speech, aggression, and sweatiness.

[and] had no reasonable grounds to believe either he or his sister was in imminent danger."); *State v. Radke*, 821 N.W.2d 316 (Minn. 2012).

The state also asserts that Valdez could have adequately defended Munguia using less-than-lethal force by (1) joining the fray and pushing or pulling Gutierrez off Munguia; or (2) using a "golf club, a pool stick, or one of the tools in the garage" to strike Gutierrez. "[A]n individual may only use reasonable force based on the circumstances of the situation." *State v. Glowacki*, 630 N.W.2d 392, 402-03 (Minn. 2001). "The degree of force used in self-defense must not exceed that which appears to be necessary to a reasonable person under similar circumstances." *State v. Basting*, 572 N.W.2d 281, 286 (Minn. 1997). Whether force was reasonable is a factual determination for the jury. *Glowacki*, 630 N.W.2d. at 403.

Here, the state argues that it was "highly unlikely" that Gutierrez was about to inflict serious bodily harm or death on Munguia during the confrontation such that Valdez was entitled to use deadly force. But that is ultimately a decision for the jury, which might reasonably conclude that being attacked and pinned to the floor placed Munguia in a vulnerable position where a single blow could have caused serious bodily harm or death. And the state's argument that Valdez had purportedly non-lethal alternatives available to him is similarly unpersuasive because, in determining whether Valdez acted reasonably, the focus of the inquiry is not upon what a defendant might have done, but rather upon the reasonableness of what the defendant actually did. *See State v. Housley*, 322 N.W.2d 746, 751 (Minn. 1982); *State v. Fidel*, 451 N.W.2d 350, 355 (Minn. App. 1990). Thus, the fact

that Valdez may have had other reasonable options at his disposal does not thereby render *un*reasonable the option that he did choose.

When Gutierrez attacked Munguia, Munguia attempted to stop Gutierrez by striking him in the head with the heavy, weighted end of a pool cue, and Valdez saw that it had no deterrent effect. Valdez observed that Gutierrez was much larger than Munguia, and Munguia was ultimately pinned underneath Gutierrez after the initial assault. Valdez also had a wrist injury at the time, which caused him pain, required a wrist brace, and made it less likely that he could physically protect his brother. And Munguia pleaded with Valdez to shoot Gutierrez, indicating his own perception of the peril that Gutierrez had placed him in. In the stress and immediacy created by Gutierrez's assault, it is unlikely that Valdez or any other similarly situated person would have the capacity to calmly consider what other options might be available to stop it. Indeed, Valdez had only seconds to determine what to do to save his brother from potentially serious bodily harm or death.

Under these circumstances, Valdez did not suddenly become the aggressor and he did not provoke Gutierrez by brandishing his pistol after Gutierrez threatened to kill them. And given Valdez's injury and what he had witnessed when Munguia tried to repel Gutierrez's attack with a pool cue, the trial record could support a jury's determination that Valdez acted reasonably under these circumstances. Valdez is therefore entitled to a new trial with a jury properly instructed on the defense of others.