STATE of Minnesota, Respondent,

v.

William GLOWACKI, Appellant.

No. C8–99–1507.

Court of Appeals of Minnesota.

July 18, 2000.

Review Granted Sept. 27, 2000.

Mike Hatch, Attorney General, St. Paul, and Peter A. MacMillan, Rondoni, MacMillan & Schneider, Ltd., Minneapolis, for respondent.

Deborah K. Ellis, St. Paul, for appellant.

Considered and decided by CRIPPEN, Presiding Judge, AMUNDSON, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

AMUNDSON, Judge

Appellant challenges his convictions of domestic assault, fifth-degree assault, and disorderly conduct, arguing that the district court erred in instructing the jury that appellant had a duty to avoid the danger, even in his own home. We reverse and remand.

## FACTS

This appeal arises from an incident occurring on April 8, 1999, between appellant William Glowacki and P.A. When they met, P.A. resided in Alabama. They began a long-distance romantic relationship, visited each other, communicated frequently by telephone, and began talking of living together and marriage. In March 1999, P.A. began moving her belongings to Glowacki's Minnesota residence and quit her job, intending to relocate to Minnesota permanently. On April 1, 1999, P.A. traveled to Minnesota to stay with Glowacki with plans to return to Alabama only briefly.

On April 8, 1999, the two were at Glowacki's home when they began arguing. The parties presented conflicting testimony about the events that evening. P.A. testified that Glowacki followed her to the den in the basement of the residence, and that he kicked her, placed his hands around her throat, and threatened to kill her. P.A. eventually ran upstairs and called 911. P.A. suffered bruises, cuts, and other injuries. When the police arrived, they did not note any injury to Glowacki, nor did he report to the responding officers that he had been assaulted or injured by P.A.

Glowacki testified that it was P.A. who followed him downstairs to the den, where she yelled at him and hit his shoulder. To prevent P.A. from following him upstairs, Glowacki testified that he put his arm out, which caused her to fall to the floor. He then testified that P.A. told him that she was going to "destroy him" and called 911.

At trial, Glowacki asserted the legal excuse of self-defense, which applied to the charges of domestic assault and fifth-degree assault. The district court instructed the jury that "[t]he legal excuse of self-defense * * * includes the duty to avoid the danger if reasonably possible." The jury convicted Glowacki of fifth-degree domestic assault, fifth-degree assault, and disorderly conduct. This appeal followed.

## ISSUE

Did the district court err when it instructed the jury that appellant had a duty to retreat from the danger presented in his own home before acting in self-defense?

## ANALYSIS

■ Glowacki contends that the district court erred by incorrectly instructing the jury on the law of self-defense. The district court instructed the jury that

[t]he legal excuse of self-defense is available only to those who act honestly and in good faith and this includes the duty to avoid danger if reasonably possible.

Of course, in reviewing the district court's charge to the jury, it must be read as a whole. *State v. Anderson*, 261 Minn. 431, 435, 113 N.W.2d 4, 7 (1962). And while district courts are afforded considerable latitude in choosing the language of jury instructions, an instruction must not materially misstate the law. *State v. Pendleton*, 567 N.W.2d 265, 268 (Minn.1997).

■ Glowacki argues that his conduct involves defense of a dwelling, and that is set out in *State v. Carothers*, 594 N.W.2d 897 (Minn.1999). In *Carothers*, the supreme court concluded that the defense of dwelling defense does not include a duty to retreat. *Id.* at 904. In so holding, the court noted that it would be logically inconsistent to insist that persons may stand their ground when protecting home or

property, but that if they are protecting themselves in their own homes, they must retreat. *See id.* at 903 (stating that "the law clearly values life above property"). But this is not a defense-of-dwelling case. The defense of dwelling defense is not available between co-residents, but only for those who use force against an intruder. *State v. Hare*, 575 N.W.2d 828, 832 (Minn.1998).[1]

■ Instead, this case involves self-defense between co-residents of the same dwelling. Even if Glowacki and P.A. had decided to terminate their relationship, they were still sharing a residence and P.A. had been living there for eight days, with plans to move in permanently. While in assessing a self-defense claim, the jury is afforded the discretion to decide whether it was more or less reasonable for a person to "advance towards or retreat from a danger within his or her home," *Carothers*, 594 N.W.2d at 904, an instruction on a duty to reasonably retreat from the danger should not be given to a jury on a self-defense claim occurring between co-residents. Accordingly, the district court's instruction was erroneous.

■■ Did Glowacki receive a fair trial in the face of this misstatement of the law? A defendant should be given a new trial if we cannot conclude, beyond a reasonable doubt, that the district court's erroneous jury instruction had no significant impact on the jury. *State v. Olson*, 482 N.W.2d 212, 216 (Minn.1992). Based on the instruction given here, the jury could have concluded that Glowacki was obligated to

leave his own residence to avoid the alleged altercation with P.A. That error is significant and entitles Glowacki to a new trial.[2]

■ The state suggests that because Glowacki failed to challenge the jury instruction at trial, he waived his right to raise the issue on appeal. But even where a defendant does not object to the instructions submitted to the jury, the reviewing court may "reverse if the instructions were misleading or confusing on fundamental points of law * * *." *State v. Butler*, 295 N.W.2d 658, 659 (Minn.1980).

## DECISION

Because we conclude the district court's jury instruction that the legal excuse of self-defense includes a duty to avoid the danger if reasonably possible misstated the law, we reverse the appellant's convictions of domestic assault and fifth-degree assault and remand for a new trial. The conviction of disorderly conduct, to which the legal excuse of self-defense does not apply, is unaffected by this decision.

**Reversed and remanded.**

1. Minn.Stat. § 609.06, subd. 1(4) (1998), provides that defense of dwelling defense is only available to one "resisting a trespass" upon his or her property. Minn.Stat. § 609.605, subd. 1(b)(3) (1998), defines trespasser as one who "trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor."

2. We note this holding seems contrary to *State v. Hennum*, 428 N.W.2d 859 (Minn.App. 1988), *aff'd in part, rev'd in part*, 441 N.W.2d 793 (Minn.1989), to the extent that it addresses whether a duty to retreat is encompassed

within the legal excuse of self-defense between co-residents. In *Hennum*, the district court's jury instructions included an instruction that the excuse of self-defense encompasses a duty to retreat. *Id.* at 866. This court upheld the decision and the supreme court, without discussion and by footnote, affirmed this court's conclusion that the district court's jury instructions on the law of self-defense were proper. *Id.* at 867, *aff'd*, 441 N.W.2d at 800 n. 5. But the later review of this issue by the supreme court in *Carothers* inevitably leads to the present holding.