**STATE of Minnesota, Respondent,**

v.

**Jeffrey Warren BAIRD, Appellant.**

No. C1–01–894.

Court of Appeals of Minnesota.

March 12, 2002.

Mike Hatch, Attorney General, Natalie E. Hudson, Assistant Attorney General, St. Paul; and Charles C. Glasrud, Stevens County Attorney, Morris, for respondent.

John M. Stuart, State Public Defender, Marie Wolf, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by WILLIS, Presiding Judge, SHUMAKER, Judge, and FOLEY, Judge.

## OPINION

FOLEY, Judge.*

Appellant challenges his conviction and sentence for third-degree assault. Appellant contends that the district court (1) committed plain error by instructing the jury that appellant had a duty to retreat when the assault occurred inside his home and (2) erred by ordering appellant to pay restitution for the victim's lost wages without proving that the victim would have been employed on those days. We reverse and remand for a new trial.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Appellant Jeffrey Baird and James Nelson resided together in Baird's motor home at a campground. On June 16, 2001, at about 1:30 a.m., Nelson, Baird, and some friends, including Baird's former wife, Jolene Bedel, who is also the mother of Baird's two young children, returned to the campground after being at a local bar. Bedel wanted to leave the campground in her vehicle, but Baird, believing she was drunk, confronted her, and took away her keys. Nelson thought Bedel should be allowed to leave and offered her his vehicle. At this point, Baird and Nelson tell different stories.

Nelson testified that he tried to push Baird away from the vehicle's door, but he did not threaten or punch Baird. Baird turned hostile, came at Nelson, punched Nelson to the ground, and started beating on him. Nelson did not strike back at Baird because Baird pinned Nelson face down onto the ground and was punching him in the back. Eventually, Nelson was able to get up. Baird told Nelson to move out of the motor home, so Nelson went inside to gather his belongings. Shortly after, Baird entered the motor home and pinned Nelson face down on the bed. Baird punched Nelson in the back and head, and Nelson was unable to punch back. During the altercation, items were moved around inside the motor home.

Baird testified that once Nelson offered his vehicle to Bedel, Baird blocked the vehicle's door. Nelson tried to pull Baird away from the door, grabbed his shirt, and then pushed him. Baird testified, "[F]inally it got to the point where I just said—I said if you really want some I said come and get some * * * and he said yeah." The matter continued as a "shoving match" for a short while. Nelson grabbed and pushed Baird and "[drove] his hands" into Baird's chest. Eventually, Baird

"threw a swing," Nelson "went down," and Baird punched Nelson in the back "a few times." Two people pulled Baird off Nelson. Baird told Nelson to take his things and leave. After Nelson went inside the motor home, Baird heard a "big kaboom and rattling." Baird went inside, saw his television "all over the floor," and then saw Nelson grab a screwdriver. Baird assumed Nelson was coming after him with it; he reacted immediately by striking Nelson on the side of his face, pinned him on the bed, and told him to give up the screwdriver. As Baird "wrenched" Nelson's arm, another person took the screwdriver away from Nelson.

After the altercation, Nelson reported the incident to the police. Baird was charged with fifth-degree assault for the incident near the vehicle and third-degree assault for the. incident inside the motor home.

At trial, Nelson testified that he went to the bar sometime between 8:00 and 10:00 p.m., and left when the bar closed, at about 1:00 a.m. Nelson indicated that he, Baird, and Bedel went to the bar together. Nelson testified that he drank ten to twelve eight-ounce glasses of beer and believed that Baird drank about the same amount. But Nelson later testified that he left the bar for a short time and returned at about midnight, and it was at this point that Baird first accompanied him to the bar. Baird's attorney asked, "So Jeff Baird would have had maybe one or two drinks at the bar while you were there?" Nelson replied, "I don't recall."

When asked if he damaged Baird's property, Nelson replied, "To my knowledge, no." Baird's attorney asked him, "Now isn't it a fact that you were throwing things around and that's why he came in?" Nelson replied, "I don't recall."

Nelson denied that he went towards Baird with a screwdriver, but admitted he probably did have a screwdriver:

Q: [Y]ou had a screwdriver in your hand during that fight?

A: When he had first come in, yeah.

Q: Okay. And, in fact, somebody else came in and took that away from you. Isn't that correct?

A: I believe so.  \* \* \*

Q: Okay. And, ah, so what you've told the jury is you were pinned on the bed, he was beating on you and some people came in to separate you and they took something away from you. Is that right?

A: Correct.

Nelson insisted he did not threaten Baird with the screwdriver.

Bedel had left the scene before the altercation began, but Alicia Bergs, Nelson's girlfriend, was present. Her testimony was consistent with Nelson's.

The investigating officer testified that Baird did not tell him that Nelson verbally threatened him. But the officer acknowledged that Baird told him Nelson repeatedly pushed and shoved him and threw his television set. Baird admitted he probably did not tell the police officer that Nelson had a screwdriver. Baird also admitted that he had a bad day and that it was a "matter of opinion" whether he lost his temper, snapped, and hit Nelson more than he needed to in order to protect himself or his property.

The district court instructed the jury that the excuse of self-defense imposes a duty to retreat or avoid the danger if reasonably possible. Baird was convicted of third-degree assault for the incident in the motor home and fifth-degree assault

for the incident near the vehicle, and ordered to pay restitution.[1] This appeal followed.

## ISSUES

1. Did the district court err in instructing the jury that Baird had a duty to retreat before defending himself in his home?

2. Did the district court err by imposing restitution for the victim's lost wages?

## ANALYSIS

### I.

■ Baird argues that, because the altercation occurred in his home, the district court erred when it instructed the jury that self-defense imposes a duty to retreat or avoid the danger if reasonably possible.

■ Baird did not object to the instructions at trial and did not make a motion for new trial based on the alleged error. Baird, however, asserts that the erroneous jury instructions constitute plain error. As a general rule, if defense counsel fails to object to an error at trial, the defendant "is deemed to have forfeited his right to have this court consider that error on appeal." *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983). But

[p]lain errors or defects affecting substantial rights may be considered by the court \* \* \* on appeal although they were not brought to the attention of the trial court.

Minn. R.Crim. P. 31.02. Before an appellate court reviews an unobjected-to error, appellant must meet a three-prong test for plain error: "there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) (citation

---

1. Baird concedes that the jury could have convicted him of fifth-degree assault for the

conduct occurring outside the motor home and does not challenge that conviction.

omitted). If appellant establishes that these three prongs are met, the appellate court assesses whether it should address the error to ensure the fairness and integrity of the judicial proceedings. *Id.* Moreover, a reviewing court may also "reverse if the instructions were misleading or confusing on fundamental points of law * * *." *State v. Butler,* 295 N.W.2d 658, 659 (Minn.1980).

■■■ Under this three-prong test, we consider first whether the district court erred. The court is afforded considerable latitude in choosing the language of jury instructions, provided that the instructions do not materially misstate the law. *State v. Pendleton,* 567 N.W.2d 265, 268 (Minn. 1997). On review, an appellate court must view the jury instructions in their entirety "to determine whether they fairly and adequately explained the law[.]" *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988).

In several cases, the supreme court appeared to approve jury instructions imposing a duty to retreat on defendants claiming self-defense when the incident occurred inside the defendant's home and the defendant and the victim were co-residents. *State v. Hennum,* 441 N.W.2d 793, 800 n. 5 (Minn.1989); *State v. Morrison,* 351 N.W.2d 359, 362 (Minn.1984). But in 1999, the supreme court examined the duty to retreat in self-defense cases and concluded that "self-defense in the home should not incorporate a duty to retreat." *State v. Carothers,* 594 N.W.2d 897, 903 (Minn.1999). *Carothers* did not consider whether a defendant claiming self-defense in his home had a duty to retreat when the aggressor was a co-resident. But the court noted that in past cases, instructions imposing the duty to retreat against a co-resident had been summarily upheld, and the court reserved the issue for future resolution, suggesting that the question may be open. *Id.* at

902, 904 n. 6; *see also State v. Glowacki,* 630 N.W.2d 392, 399 (Minn.2001) (stating *Carothers* recognized that cases affirming duty to retreat against co-occupants did so summarily and that by reserving issue in *Carothers,* the court suggested the question may be open).

Based on *Carothers,* this court in *Glowacki* concluded that jury instructions that included a duty-to-retreat requirement for a self-defense claim in an encounter between co-residents were erroneous. *State v. Glowacki,* 615 N.W.2d 843, 845 (Minn. App.2000), *rev'd on other grounds,* 630 N.W.2d 392 (Minn.2001). The Minnesota Supreme Court affirmed our decision that the jury instruction was erroneous and that there was no duty to retreat from one's own home before defending oneself against a co-resident, but reinstated the jury's verdict, concluding that the error was harmless. *Glowacki,* 630 N.W.2d at 402–03.

■■■ The state argues that this court should apply *Glowacki* prospectively, asserting that because *Glowacki* was decided seven months after Baird's trial, *Glowacki* does not apply in this case. But

[t]he general rule is that, absent special circumstances or specific pronouncements by the overruling court that its decision is to be applied prospectively only, the decision is to be given retroactive effect.

*Hoff v. Kempton,* 317 N.W.2d 361, 363 (Minn.1982) (citation omitted). In *Glowacki,* the supreme court did not specifically pronounce or otherwise indicate that the rule should only apply prospectively. 630 N.W.2d at 392. Therefore, we decline to so limit *Glowacki.*

Moreover, *Hoff* sets forth a three-factor test to determine when a decision should be given prospective application:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." * * * Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

317 N.W.2d at 363 (quotation omitted). *Glowacki* does not satisfy the first factor. Although *Glowacki* appears to establish a new rule, past precedent was no longer clear because *Carothers* reserved the issue, suggested that the question may be open, and noted that cases supporting the duty to retreat against a co-resident were merely summary treatments of the issue. *Carothers,* 594 N.W.2d 897 at 902, 904 n. 6; *see also Glowacki,* 615 N.W.2d at 845 n. 2 (stating that *Carothers* "inevitably leads" to the conclusion that the law does not impose duty to retreat against co-occupant). Because *Glowacki* does not satisfy the first factor, we need not address the second or third factors. Moreover, the cases cited by the state to support its argument that *Glowacki* should be given only prospective application are cases in which the supreme court, when announcing a new rule of law, announced the rule would be applied prospectively. *See e.g.,*

*State v. Olsen,* 258 N.W.2d 898, 907 (Minn. 1977). The state failed to cite any case where this court has declared that a supreme court decision only applied prospectively without such guidance by the supreme court.

Additionally, we note that the law available to the district court at the time of Baird's trial included *Carothers* and this court's *Glowacki* decision, which, at the very least, would have cautioned against including a duty-to-retreat instruction. *Carothers,* 594 N.W.2d at 904 n. 6; *Glowacki,* 615 N.W.2d at 845.

■ Because we conclude that *Glowacki* does not apply prospectively only, we consider whether the court's instructions in this case were erroneous. The district court instructed the jury that

[t]he legal excuse of self-defense is only available to those who act honestly and in good faith. This includes the duty to retreat or avoid the danger if reasonably possible.

Baird was inside his home, of which Nelson was a co-resident. Baird argued self-defense, and the record shows that Nelson was holding a screwdriver while in the home. Therefore, under *Glowacki,* Baird did not have a duty to retreat against a co-resident, and the district court's instruction was erroneous. Baird has established the first prong of the plain-error test.

■ The second prong of the plain-error test, requires that we consider whether the district court's error was plain error. "[T]o satisfy the second prong, it is sufficient that the error is plain at the time of the appeal." *Griller,* 583 N.W.2d at 741 (citation omitted). Under *Glowacki,* the district court's instruction that Baird had a duty to retreat was error, and thus was plain error.[2]

**2.** In *Glowacki,* the supreme court reviewed the appellant's claim of error even though he

did not object at trial. *Glowacki,* 630 N.W.2d at 398. In *Glowacki,* the defendant did, how-

■ Third, we consider whether appellant has established the third prong of the test. The third prong is satisfied "if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741 (citation omitted). Plain error is prejudicial if there is a reasonable likelihood that the error would have had a significant effect on the jury's verdict. *Id.* The district court instructed the jury that self-defense imposes a duty to retreat, and the state emphasized the duty to retreat in its closing argument:

> There's also an instruction in here about retreat. Remember we talked about—could you leave that place, could you go get help. Did you have to hit him? The Judge will tell you that the legal excuse of self defense is available only to those who act honestly and in good faith. This includes the duty to retreat or avoid danger if reasonably possible. So let's be real clear on this. Whatever he thinks, the defendant does not have the right to say well, he's in here in this place that we live in and he's got a screwdriver in his hand. Think I'll hit him in the face. He can only do that if that's reasonably necessary to protect himself, but he had a world of other options * * *.

Because the court included a duty to retreat, and Baird admitted that he did not retreat, the jury may never have considered whether Baird's actions were otherwise reasonable and taken in self-defense.

A proper consideration of the reasonableness of Baird's actions could have led the jury to conclude that Baird's actions were reasonable. Nelson consumed 10 to 12 eight ounce glasses of beer between 8:00 p.m. and 1:00 a.m., while Baird only drank between midnight and 1:00 a.m. Un-

der Baird's version of the facts, he only punched Nelson a "few times" after Nelson repeatedly pushed and shoved Baird and "drove his knuckles" into his chest as he tried to prevent Baird's ex-wife from driving while under the influence of alcohol. After Nelson damaged Baird's television and came at Baird with a screwdriver, Baird punched him. Nelson "did not recall" damaging Baird's property before Baird entered the motor home. Nelson admitted he held a screwdriver and someone took it away from him while inside the motor home. The record establishes that the jury could have concluded that Baird acted in self-defense and therefore there is a reasonable likelihood that the error had a significant effect on the jury's verdict. Therefore, we conclude the plain error was prejudicial and affected the outcome of the case and cannot be considered harmless. Baird has established the third and final prong of the plain-error test.

■ Finally, we consider whether we should address this error to ensure fairness and the integrity of the judicial proceedings. *Id.* at 740. The court instructed the jury that Baird had a duty to retreat. It is undisputed that Baird was able to exit the motor home. On this record, we cannot conclude that the jury ever looked beyond the undisputed fact that Baird could have retreated. Moreover, Baird's version of the facts was not farfetched. *Id.* at 742 (concluding it would be a miscarriage of justice to grant Griller new trial because jury considered and rejected Griller's farfetched version of events). Under these circumstances, fairness requires that Baird be afforded an opportunity to present his version of the facts to a jury under the proper instructions. *See State v. Olson*, 482 N.W.2d 212,

---

ever, preserve his objection by moving for a new trial. *Id.* The supreme court noted that the district court had relied on a case it re-

versed two months before the trial, and "the error was one of fundamental law or controlling principle." *Id.*

216 (Minn.1992) (defendant entitled to new trial unless appellate court concludes beyond a reasonable doubt that district court's erroneous instruction had no significant impact on jury).

## II.

Baird also argues that the district court erroneously ordered him to pay for the victim's loss of wages after June 30 because the state did not prove that Nelson would have been employed beyond that date. Because we reverse Baird's third-degree assault conviction and remand for a new trial, and because the restitution for lost wages resulted from Nelson's jaw injury that occurred inside the motor home as a result of the alleged third-degree assault incident, we vacate Baird's duty to pay restitution. Depending on the result of the new trial, the district court may reconsider the restitution award.

## DECISION

Because the district court erroneously instructed the jury that Baird had a duty to retreat against a co-occupant when he was in his own home, and the error was not harmless, we reverse Baird's third-degree assault conviction, and Baird is entitled to a new trial. The award of restitution is vacated and may be reconsidered by the district court after the new trial if restitution is then appropriate.

**Reversed and remanded.**