**STATE of Minnesota, Petitioner, Appellant,**

v.

**Jeffrey Warren BAIRD, Respondent.**

**No. C1-01-894.**

Supreme Court of Minnesota.

Dec. 5, 2002.

Mike Hatch, Minnesota Attorney General, Kelly O'Neill Moller, Assistant Attorney General, Charles C. Glasrud, Stevens County Attorney, Morris, for Appellant.

John M. Stuart, State Public Defender, Marie Wolf, Assistant State Public Defender, Minneapolis, for Respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

We are asked in this case if our holding in *State v. Glowacki,* 630 N.W.2d 392, 402 (Minn.2001)—that when acting in self-defense there is no duty to retreat from one's own home even if the aggressor is a co-resident—is to be given retroactive application. We hold that the *Glowacki* rule applies retroactively. Further, we hold that the district court's erroneous instruction that respondent had a duty to retreat constitutes plain error and requires a new trial.

Respondent Jeffrey Warren Baird was charged with disorderly conduct, fifth-degree assault, and third-degree assault, in violation of Minn.Stat. § 609.72, subd. 1 (1998), § 609.224, subd. 1 (1998), and § 609.223, subd. 1 (1998), respectively, in connection with an altercation with a co-

resident at Baird's home. Baird asserted at trial that he was acting in self-defense, and the district court instructed the jury that Baird had a duty to retreat. Baird was found guilty on all charges. Baird appealed the third-degree assault conviction, contending that the district court committed plain error by instructing the jury that he had a duty to retreat when the assault occurred inside his home. The court of appeals reversed the conviction, concluding that the district court had erred by instructing the jury that Baird had a duty to retreat, and remanded to the district court for a new trial. We affirm the court of appeals.

Baird and James Nelson resided together in Baird's motor home at a campground. At about 1:30 a.m. on June 16, 2000, Nelson, Baird, and Jolene Bedel, Baird's ex-wife, returned to the campground from a local bar. All three had been drinking.[1] Nelson's girlfriend Alicia Bergs was at the motor home at that time. Bedel wanted to leave the campground in her vehicle, but Baird thought she was too drunk to drive and confronted her, taking away her keys. Nelson offered to let Bedel use his vehicle, but Baird blocked the door to Nelson's vehicle. Those who testified dispute what happened next.

Nelson testified that he tried to push Baird away from the vehicle's door but did not threaten or punch Baird. Baird became hostile and egged Nelson on, saying "let's go" and "come on" before tackling Nelson and pinning him face-down to the ground. Nelson did not strike back. Bergs added that when she tried to break up the fight, Baird stood up and elbowed her in the chin. Nelson told Baird to leave Bergs alone, and Baird resumed attacking

Nelson, telling him to get his things from inside the motor home and leave. Finally Baird and Nelson stood up. Nelson and Bergs went inside the motor home to collect Nelson's belongings. Baird followed them. He attacked Nelson again, this time pinning Nelson face down on the bed and punching him. Nelson admitted that he may have had a screwdriver in his hand while inside the motor home and that someone had taken it away from him. Bergs' testimony was consistent with Nelson's.

Baird testified that Nelson tried to push him away from the vehicle door. Eventually, Baird swung at Nelson, who fell to the ground. Baird admitted that he continued to punch Nelson in the back and that he went "a little overboard" in attacking Nelson. After Nelson and Bergs went into the motor home, Baird heard a loud "kaboom." He went inside to investigate. Inside he saw his television set "all over the floor" and Nelson approaching him with a screwdriver in his hand. Afraid that Nelson was going to stab him with the screwdriver, Baird hit Nelson in the face and wrenched his arm so that someone could take the screwdriver away from him. Baird admitted that he was nearest the motor home door and could have left at any time.

After the altercation, Nelson reported the incident to police. Baird was charged with disorderly conduct, fifth-degree assault, and third-degree assault. He claimed self-defense. The district court instructed the jury that the excuse of self-defense imposes a duty to retreat or avoid the danger if reasonably possible:

> The legal excuse of self defense [sic] is only available to those who act honestly

---

1. Baird testified that he drank two or three 12–ounce beers about noon and one beer about 11:30 p.m. on June 15 and two screwdrivers between midnight and 1 a.m. on June

16. Nelson testified that he consumed 10 to 12 8–ounce glasses of beer between 8 p.m., June 15 and 1 a.m., June 16.

**109**

and in good faith. This includes the duty to retreat or avoid the danger if reasonably possible.

Baird did not object to the instruction at trial.[2] The jury found Baird guilty on all counts.[3]

Baird appealed from the judgment of conviction of third-degree assault. *State v. Baird*, 640 N.W.2d 363, 364 (Minn.App. 2002). He argued that the district court committed plain error by instructing the jury that he had a duty to retreat when the assault took place inside his own home. *Id.* at 366. Because Baird did not make an objection at trial or make a motion for a new trial based on the instruction, the court of appeals applied the plain error test. *Id.* Under the first prong of the plain error test, the court of appeals considered whether the duty-to-retreat instruction was error. *Id.* at 367. The court noted that *State v. Hennum*, 441 N.W.2d 793, 800 n. 5 (Minn.1989), and *State v. Morrison*, 351 N.W.2d 359, 362 (Minn. 1984),[4] seemed to approve of jury instructions that imposed a duty to retreat within one's home when the aggressor is a co-resident. *Baird*, 640 N.W.2d at 367. Looking to *State v. Carothers*, 594 N.W.2d 897, 902–04 (Minn.1999), and our decision in *Glowacki*, however, the court of appeals concluded that the duty-to-retreat instruc-

tions had been summarily upheld in *Hennum* and *Morrison* and that self-defense in the home should not include a duty to retreat. *Baird*, 640 N.W.2d at 367.

The court of appeals acknowledged the general rule under *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn.1982), that absent special circumstances or specific pronouncements of prospectivity, a decision is given retroactive effect. *Baird*, 640 N.W.2d at 367. Recognizing that this court did not specifically indicate that *Glowacki* should apply only prospectively, the court of appeals continued its analysis under the special circumstances test. *Baird*, 640 N.W.2d at 367–68. The court determined that *Glowacki* failed under the first factor of the special circumstances test because the *Glowacki* decision did not establish a new principle of law by overruling clear past precedent. *Baird*, 640 N.W.2d at 368. Because special circumstances did not exist, the court of appeals held that *Glowacki* would be given retroactive effect. *Baird*, 640 N.W.2d at 368.

The court of appeals then returned to the plain error test. *Id.* at 368. The court determined that the district court erred and that the error was plain because, under *Glowacki*, the district court should not have instructed the jury that Baird had a duty to retreat. *Baird*, 640 N.W.2d at 368.

---

2. On the date the court instructed the jury, December 14, 2000, relevant case law for the jury instruction on the duty to retreat issue included: *State v. Carothers*, 594 N.W.2d 897, 904 n. 6 (Minn.1999) (implying that whether one has a duty to retreat from one's home before using self-defense against a co-resident was an open issue); *State v. Hennum*, 441 N.W.2d 793, 800 n. 5 (Minn.1989) (summarily affirming jury instructions that included duty to retreat language in a self-defense case between co-residents); and *State v. Glowacki*, 615 N.W.2d 843, 845 (Minn.App.2000) (holding no duty to retreat in self-defense case against a co-resident), *rev. granted* September 27, 2000, *State v. Glowacki*, 630 N.W.2d 392 (Minn.2001).

3. Baird was sentenced on the third-degree assault conviction to 18 months' confinement, execution stayed for a period of ten years subject to conditions of probation, which included an order to pay restitution for Nelson's lost wages.

4. In *Morrison*, the defendant attacked her boyfriend's roommate, who was not a co-resident, in the defendant's home. 351 N.W.2d at 360. Thus, *Morrison* may not be read to impose a duty to retreat within one's home when the aggressor is a co-resident.

The court then examined the third prong of the plain error test—whether " 'the error was prejudicial and affected the outcome of the case' " —and decided that the error was prejudicial. *Id.* at 369 (quoting *State v. Griller,* 583 N.W.2d 736, 741 (Minn.1998)). The court concluded that all three prongs of the plain error test were satisfied and that the error was not harmless, warranting reversal and remand for a new trial. *Id.* at 369–70.

## I.

 Whether a decision applies retroactively or nonretroactively is a legal question we review de novo. *State v. Costello,* 646 N.W.2d 204, 207 (Minn.2002).[5] Generally, our rulings are given retroactive effect. *Baker v. State,* 590 N.W.2d 636, 640 (Minn.1999). We have followed the lead of the United States Supreme Court, however, in making certain limited exceptions to the general rule. Thus, in *State v. Hamm,* we adopted a test developed by the Supreme Court in *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), for determining whether a new constitutional rule of criminal procedure should be applied prospectively. *State v. Hamm,* 423 N.W.2d 379, 386 (Minn.1988)

**5.** The terms retroactive, nonretroactive, and prospective have been variously defined. For example, one commentator has explained that when a decision applies "retroactively," the decision applies to all cases (past, present or future); when the court applies a ruling to the case creating the new rule and to future cases, then the rule applies "nonretroactively"; and when the court applies a rule "prospectively," the rule applies only to future cases and not to the case adopting the new rule or to previous cases. Charles Leonard Scalise, *A Clear Break from the Clear Break Exception of Retroactivity Analysis: Griffith v. Kentucky,* 73 Iowa L.Rev. 473, 473–74 n. 1 (1988). *But see* Pamela J. Stephens, *The New Retroactivity Doctrine: Equality, Reliance and Stare Decisis,* 48 Syracuse L.Rev. 1515, 1516 & n. 3 (1998) (footnotes omitted) ("When the Court decides that the new rule shall not apply to conduct or events which preceded its announcement, including those of the parties before the Court in the case which announces the new rule, the Court is said to engage in 'pure prospectivity' or to have announced a 'purely prospective rule.' When the Court applies the announced rule to those before it as well as all those whose cases are still viable, it is said to have applied the rule 'retroactively.' * * * [Applying] the new rule to the parties before it in the case which announces the new rule, but [declining] to apply it to those similarly situated whose cases are still in the pipeline," is called "nonretroactivity, modified prospectivity or limited retroactivity."); Paul E. McGreal, *Back to the Future: The Supreme Court's Retroactivity Jurisprudence.* 15 Harv. J.L. & Pub. Pol'y 595, 597 (1992) (defining "full retroactivity" as "application of a new legal rule to the case in which the new rule was announced as well as in all cases that are not final"; "pure prospectivity" as application of "the new legal rule to neither the parties in the law-making decision nor to those others against whom or by whom it might be applied to conduct or events occurring before that decision"; and "[s]elective prospectivity" as application of "the new rule to the parties in the case announcing the rule" but not to "cases arising out of conduct predating the announcement of the new rule"). In practice, however, courts have confused these terms, often identifying nonretroactivity as prospectivity. Scalise, *supra,* at 473, 473–74 n. 1; *see, e.g., Desist v. United States,* 394 U.S. 244, 256, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Douglas, J., dissenting) ("At least the Court should not say as respects *Katz* that it is given 'wholly prospective application,' when it was made retroactive in his case."); *Johnson v. New Jersey,* 384 U.S. 719, 732, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (describing effect of decision as "prospective application only" but applying new rule to petitioner). The state asks us to apply *Glowacki* prospectively, but because we applied the rule we announced in *Glowacki* to the parties in that case, it is inappropriate to determine now that *Glowacki* applies prospectively. *Glowacki,* 630 N.W.2d at 402–03 (concluding that the district court erred when it instructed the jury "that Glowacki had a duty to 'avoid the danger if reasonably possible' " but that the error was harmless).

(holding that the Minnesota Constitution guarantees a criminal defendant's right to a 12–person jury in misdemeanor prosecutions and, adopting the Supreme Court's clear break exception, applying rule prospectively), *superseded on other grounds by* Minn. Const. art. I, § 4; *see Griffith v. Kentucky,* 479 U.S. 314, 320, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (discussing *Linkletter*); *see also State v. Olsen,* 258 N.W.2d 898, 906–07 (Minn.1977) (adopting procedural rule in dual-representation situation for defendants to be advised of their right to counsel and, citing *Linkletter,* 381 U.S. at 629, 85 S.Ct. 1731 and *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), holding new rule is prospective).[6] Similarly, in *Hoff v. Kempton,* we adopted the special circumstances test for dealing with the retroactivity question as announced by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Hoff,* 317 N.W.2d at 363–65 (applying *Chevron Oil* and holding that the rule of *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), that the attachment-of-insurance-policy method of establishing quasi-in-rem jurisdiction denies an out-of-state defendant's due process rights, applies retroactively).

In this case, the parties have assumed the applicability of the *Chevron Oil* special circumstances test and have asked us to give *Glowacki* retroactive or nonret-roactive effect on the basis of whether a special circumstances exception exists. The special circumstances test requires that three factors be satisfied for a decision to apply nonretroactively:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." * * * Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. 349 (citations omitted), *quoted in Hoff,* 317 N.W.2d at 363. We have had occasion to apply the special circumstances test in the past but "have made purely prospective rulings in only very limited situations." *Turner v. IDS Fin. Servs., Inc.,* 471 N.W.2d 105, 108–09 (Minn.1991) (citing *Olsen,* 258 N.W.2d at 907 n. 15, and *Nieting v. Blondell,* 306 Minn. 122, 235 N.W.2d 597, 603 (1975)).[7]

---

**6.** With *United States v. Johnson,* 457 U.S. 537, 562, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (holding that, subject to certain exceptions, "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered"), and *Griffith,* 479 U.S. at 328 (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past"), the United States Supreme Court overruled the clear break exception enunciated in *Linkletter* and *Stovall.*

**7.** Examples of our application of the special circumstances test include: *Holmberg v. Holmberg,* 588 N.W.2d 720, 721, 727 (Minn. 1999) (applying the special circumstances test and holding that the administrative child sup-

█ We find the special circumstances test, which was formulated to deal with questions of retroactivity for civil cases, ill-suited to the present criminal case. *See Griffith,* 479 U.S. at 322 n. 8, 107 S.Ct. 708 (differentiating retroactivity analysis for newly declared rules of constitutional criminal procedure from retroactivity analysis for civil cases). The rationale behind the special circumstances test is that, in some cases, the disruptive effect retroactivity has on parties and their individual situations outweighs the countervailing interest in treating all similarly situated parties alike. *See American Trucking Associations v. Smith,* 496 U.S. 167, 181–86, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990). This case does not present that concern. Here we are asked whether *Glowacki,* which was on appeal to our court at the time of Baird's trial and which imposed no duty on Baird's part to retreat from his home before using self-defense against a co-resident, applies to Baird. We conclude that it does. To hold otherwise would be to treat similarly situated criminal defendants differently. *See Griffith,* 479 U.S. at 327, 107 S.Ct. 708 (quoting *Hankerson v. North Carolina,* 432 U.S. 233, 247, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (Powell, J., concurring in judgment), quoting *Desist v. United States,* 394 U.S. 244, 255, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Douglas, J., dissenting)) (internal quotation marks omitted) ("[I]t hardly comports with the ideal of administration of justice with an even hand, when one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine."); *United States v. Johnson,* 457 U.S. 537, 547–48, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (quoting *Desist,* 394 U.S. at 258–59, 89 S.Ct. 1030 (Harlan, J., dissenting)) (" '[W]hen another similarly situated defendant comes before us, we must grant the same relief or give a principled reason for acting differently. We depart from this basic judicial tradition when we simply pick and choose from among similarly situated defendants those who alone will receive the benefit of a "new" rule of constitutional law.' "); *see also James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 538–43, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (addressing the retroactive application of *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), holding that *Bacchus* applies retroactively in an opinion joined by only Justices Souter and Stevens, and suggesting that *Chevron Oil* should be overruled); *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 90, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (rejecting civil retroactivity and holding "[i]n accord with *Griffith v. Kentucky* * * * and *James B. Beam Distilling Co. v. Georgia* * * * that

port process is violative of the separation of powers doctrine and thus unconstitutional and that this ruling is nonretroactive); *Cambridge State Bank v. Roemer,* 457 N.W.2d 716, 722 (Minn.1990) (applying special circumstances test and holding that bank franchise tax is discriminatory based on *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 398–99, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983), and concluding that *Memphis Bank* is to be given "prospective application only"), *vacated on other grounds by Norwest Bank Duluth v.*

*James,* 501 U.S. 1246, 111 S.Ct. 2881, 115 L.Ed.2d 1047 (1991); and *Wolner v. Mahaska Indus., Inc.,* 325 N.W.2d 39, 41–43 (Minn. 1982) (applying the special circumstances test and holding that *Superwood Corp. v. Siempelkamp Corp., et al.,* 311 N.W.2d 159 (Minn. 1981), *overruled on other grounds by Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990), which limited tort recovery for economic losses in commercial transactions, did not apply retroactively).

this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision"). It seems patently unfair to us to apply different rules to Glowacki and Baird—two similarly situated defendants—simply because Glowacki's appeal reached us first. We therefore decline to apply the special circumstances test to the instant case. Furthermore, finding no rationale to except *Glowacki* from our general rule of retroactivity, we hold that *Glowacki* applies retroactively.

## II.

■ Generally speaking, an appellate court will not consider an alleged error in jury instructions unless the instructions have been objected to at trial. *State v. Cross,* 577 N.W.2d 721, 726 (Minn.1998). In the absence of an objection, the appellate court may review jury instructions if the instructions contain plain error affecting substantial rights or an error of fundamental law. *State v. Crowsbreast,* 629 N.W.2d 433, 437 (Minn.2001); *State v. Malaski,* 330 N.W.2d 447, 451 (Minn.1983); *see also* Minn. R.Crim. P. 26.03, subd. 18(3), 31.02. Under this test, the challenging party must show: 1) error, 2) that is plain, and 3) that affects substantial rights. *Griller,* 583 N.W.2d at 740. If all three prongs are satisfied, the court determines whether the error must be addressed to ensure the fairness and integrity of the judicial proceedings. *Id.*

■ We apply the plain error test because Baird neither objected to the instruction at trial nor made a motion for a new trial based on the instruction. *Baird,* 640 N.W.2d at 366. We begin by addressing whether the district court erred in giving the duty-to-retreat instruction.

■ A trial court is given considerable latitude in selecting the language of jury instructions, but instructions may not materially misstate the law. *State v. Pendleton,* 567 N.W.2d 265, 268 (Minn.1997). Because we decide today that *Glowacki,* which does not impose a duty to retreat from one's home before using self-defense against a co-resident, applies retroactively, the duty-to-retreat instruction given at Baird's trial in December 2000 misstated the law. Under *Glowacki,* the district court's instruction was erroneous because Baird did not have a duty to retreat from his home against a co-resident. The first prong of the plain error test is thus satisfied.

■ Having determined that the district court erred in instructing the jury that Baird had a duty to retreat, we turn to the second and third prongs of the plain error test. Under the second prong of the plain error test, we consider whether the district court's error is plain. "[T]o satisfy the second prong it is sufficient that the error is plain *at the time of the appeal.*" *Griller,* 583 N.W.2d at 741 (emphasis added). In this case, the district court gave a duty-to-retreat instruction; but by the time of appellate consideration, under *Glowacki,* a co-resident does not have a duty to retreat before using self-defense in the home. Because *Glowacki's* holding now renders the duty-to-retreat instruction given in error at Baird's trial clear and obvious, the error is plain. Baird has established the second prong of the plain error test.

■ The third prong of the plain error test requires us to determine if the error was prejudicial and affected the outcome of the case. *Griller,* 583 N.W.2d at 741. Plain error is prejudicial if there is a " 'a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury.' " *Id.* at 741 (quoting *State v. Glidden,* 455 N.W.2d 744, 747 (Minn.1990)).

The State argues that even if *Glowacki* is to be applied retroactively, Baird is not entitled to a new trial because the third prong fails. The State contends that any error was not prejudicial to Baird because Baird used an excessive amount of force in attacking Nelson and thus even a properly instructed jury could not have found that Baird acted in self-defense where Baird continued to hit Nelson after the screwdriver had been removed from Nelson's hand. Baird argues that there is a reasonable likelihood that a properly instructed jury could have accepted his claim of self-defense.

We agree with Baird. Evidence in the record that Nelson was holding a screwdriver at the time of the attack establishes that the jury could have concluded that Baird acted in self-defense. Under the circumstances, we conclude that it is simply impossible to determine whether the jury rejected Baird's version of the facts or whether it accepted his version but concluded that he was guilty nevertheless because he failed to retreat. If the jury had known that Baird did not have a duty to retreat, it is possible that it would have decided that Baird's actions were reasonable and taken in self-defense. Because there is a reasonable likelihood that the error had a significant effect on the jury's verdict, we conclude that the error was prejudicial and affected the outcome of the case and therefore that it cannot be considered harmless. *Id.*

Finally, we address whether a new trial is required "to ensure fairness and the integrity of judicial proceedings." *Griller*, 583 N.W.2d at 742. In this case, the district court instructed the jury that self-defense "includes the duty to retreat or avoid the danger if reasonably possible." No evidence was offered that Baird tried to retreat. Furthermore, the State emphasized a duty to retreat in closing argument:

There's also an instruction in here about retreat. Remember we talked about could—could you leave that place, could you go get help. Did you have to hit him? The Judge will tell you that the legal excuse of self defense is available only to those who act honestly and in good faith. This includes the duty to retreat or avoid danger if reasonably possible. So let's be real clear on this. Whatever he thinks, the defendant does not have the right to say well, he's in here in this place that we live in and he's got a screwdriver in his hand. Think I'll hit him in the face. He can only do that if that's reasonably necessary to protect himself, but he had a world of other options * * *.

Given the instruction and the State's emphasis in closing argument, the jury may not have considered whether Baird's conduct was reasonable under the circumstances. Fairness requires that Baird be given an opportunity to present his account of the facts to a jury under the proper instructions. We therefore affirm the court of appeals.

Affirmed.