*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1972**


State of Minnesota,
Respondent,

vs.

Jason Alan Folland,
Appellant.


**Filed September 8, 2014
Affirmed
Halbrooks, Judge**


Benton County District Court
File No. 05-CR-13-169

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Phillip K. Miller, Benton County Attorney, Foley, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Chutich, Judge; and

Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction of third-degree controlled-substance crime, arguing that the district court committed reversible error when it gave a no-adverse-inference jury instruction without first obtaining appellant's personal consent on the record. We affirm.

**FACTS**

On January 24, 2013, appellant Jason Folland was arrested on two outstanding warrants at the St. Cloud Amtrak Depot when he disembarked from a train that he had boarded in Washington state. A suitcase in his possession was inventoried at the jail and found to contain more than 10.3 kilograms (22.7 pounds) of marijuana.[1] Folland gave a recorded statement to an investigator, telling him that a friend had purchased his train ticket and offered him $1,500 to transport the suitcase to Minnesota. Folland's friend told him that the suitcase contained marijuana, but not its specific quantity.

Outside the jury's presence, Folland elected not to testify, stating, "I guess the [recorded statement] speaks for itself. I guess I've pretty much said all I need to say." The following colloquy then occurred:

> DISTRICT COURT: Then with regard to that language contained in the final instructions on page two, [defense counsel], specifically, I could include or not include this language, and that's up to you and Mr. Folland, that, that

---

[1] A forensic scientist from the Bureau of Criminal Apprehension testified that the weight of the marijuana was more than 10 kilograms but clearly less than the 50-kilogram threshold for the next charging level, so per agency policy he stopped weighing the marijuana after reaching 10 kilograms.

language is, "The defendant has the right not to testify. This right is guaranteed by the state and federal constitutions. You should draw no inference from the fact that the defendant has not testified in this case."

That is optional language that I will include if you want me to. If you would rather I not include that, a concern about drawing further attention to it, I'll eliminate that language.

DEFENSE COUNSEL: We would like it included, Your Honor.

DISTRICT COURT: All right. We will include that language then.

The language, which is taken from 10 *Minnesota Practice*, CRIMJIG 3.17 (2006), was included in the jury instructions. An audio recording of Folland's statement was subsequently played during trial, and transcripts were provided to the jury. After ten minutes of deliberation, the jury returned a verdict of guilty. Folland was convicted of one count of third-degree controlled-substance crime and sentenced to the presumptive sentence of 33 months in prison. This appeal follows.

## D E C I S I O N

Folland argues that the district court committed plain error affecting his substantial rights by giving the no-adverse-inference instruction requested by his counsel without first confirming Folland's personal consent. No objection was made at trial. An unobjected-to jury instruction is subject to plain-error analysis. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). Under plain-error analysis, Folland must establish (1) an error, (2) that is plain, and (3) that affects his substantial rights. *State v. Griller*, 583

N.W.2d 736, 740 (Minn. 1998). If these three prongs are satisfied, we assess whether to remedy the error to ensure fairness and the integrity of the judicial proceedings. *Id.*

"[A]t the defendant's own request and not otherwise, [the defendant shall] be allowed to testify; but failure to testify shall not create any presumption against the defendant, nor shall it be alluded to by the prosecuting attorney or by the [district] court." Minn. Stat. § 611.11 (2012). Due to concerns about calling a defendant's silence to the jury's attention, a district court ordinarily should not give a no-adverse-inference jury instruction without first confirming that it is the defendant's personal preference. *McCollum v. State*, 640 N.W.2d 610, 617 (Minn. 2002); *State v. Thompson*, 430 N.W.2d 151, 153 (Minn. 1988). Even when defense counsel requests the instruction, the district court should ensure that a record is made "of the defendant's clear consent and insistence that the instruction be given." *McCollum*, 640 N.W.2d at 617. This is "the better practice." *Id.* at 616.

Here, although the district court correctly acknowledged Folland's role in the jury-instruction decision, it did not close the loop by specifically confirming Folland's wishes on the record. The district court therefore erred, and because no special circumstances were present, the error was plain. *See id.* at 616-17; *see also Griller*, 583 N.W.2d at 740. But Folland fails to satisfy the third prong of the plain-error analysis because he has not shown that the jury instruction had a significant effect on the jury's verdict. *See Griller*, 583 N.W.2d at 741; *see also State v. Gomez*, 721 N.W.2d 871, 880 (Minn. 2006) (stating that substantial rights are affected if "there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict").

When a defendant fails to object to a no-adverse-inference instruction, he "bears a heavy burden of showing that substantial rights have been affected." *Gomez*, 721 N.W.2d at 880. Folland argues that his substantial rights were affected because "[t]he jury likely wanted to hear from [Folland] about the details of how he came to be in possession of this suitcase" and that "[t]he jury may have been willing to consider leniency toward[] [Folland] if they had heard his testimony that he was not a habitual drug trafficker and he was merely helping out a friend without knowing how much marijuana was in the suitcase." But the jury did hear Folland's account through his recorded statement. And, in any event, whether he is a habitual trafficker or was simply helping a friend is not an element of the charged offense.

The jury was asked to determine whether the state had proved beyond a reasonable doubt that Folland possessed, in Benton County, ten kilograms or more of a substance he knew to be marijuana. *See* Minn. Stat. § 152.023, subd. 2(a)(5) (2012). Investigator Soyka testified that the St. Cloud Amtrak Depot where Folland was arrested is located in Benton County. Investigator Hemmesch testified that from the time Folland exited the train until his arrest, the suitcase was in Folland's sole possession. Investigator Hemmesch testified that he transported the suitcase from the Amtrak Depot to the jail, where an inventory revealed 21 bags of a substance that appeared to be marijuana. A forensic scientist testified that the substance was more than ten kilograms of marijuana. And Folland acknowledged in his recorded statement that he knew that the suitcase contained marijuana.

Because the jury heard Folland's side of the story through his recorded statement, and there was strong evidence supporting the jury's verdict, we conclude that Folland has failed to show that the no-adverse-inference jury instruction affected his substantial rights. Because the third prong of the plain-error test is not satisfied, we need not consider the effect of the error on fairness and the integrity of the trial. The district court did not commit reversible error in giving the no-adverse-inference instruction.

**Affirmed.**